### Enos Logan v. The State.

#### No. 1370. Decided May 22, 1912.

**1.—Rape—Insufficiency of the Evidence.**

Where the testimony of the prosecutrix as to the alleged act of sexual intercourse was unreasonable, and the evidence showed no acts of prior intimacy or even close acquaintance between defendant and prosecutrix, and no circumstantial corroboration of prosecutrix' testimony, the conviction could not be sustained, although, as a rule, the unsupported testimony of the prosecutrix would be sufficient; however, such testimony must bear verity on its face, and not in itself create doubt as to its reasonableness and probable truth.

**2.—Same—Argument of Counsel.**

Where the bill of exceptions does not present the argument of State's counsel in a way that the same was reversible error, the cause will not be remanded, yet counsel for the State are warned to remain in the record.

**3.—Same—Argument of Counsel.**

Where, upon trial of rape, it appeared from the record on appeal that improper argument of the State's counsel influenced the jury in finding a verdict, the same might be reversible error, although no special charge requested.

**4.—Same—Misconduct of Jury—Telephone.**

While the State has, perhaps, met the measure of proof to sustain the verdict, where appellant complained that the jurors were permitted to talk with their families over the telephone, yet such practice is condemned and should not be permitted under Article 728, Code Criminal Procedure.

**5.—Same—Practice on Appeal.**

While, perhaps, other matters outside of the insufficiency of the evidence would not be reversible error, yet taking them together with the evidence, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Somervell. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Levi Herring* and *W. E. Myres* and *Bell & Milam,* for appellant.—On the question of the insufficiency of the evidence: State v. Goodale, 109 S. W. Rep., 9.

On question of misconduct of jury: Campbell v. State, 40 S. W. Rep., 496; Early v. State, 51 Texas Crim. Rep., 382, 103 S. W. Rep., 873; Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W. Rep., 759.

*C. E. Lane,* Assistant Attorney-General, and *Jno. J. Hiner,* District Attorney, for the State.—On question of argument of counsel: Levine v. State, 35 Texas Crim. Rep., 647.

HARPER, JUDGE.—Appellant was indicted, charged with the offense of rape upon the person of Ellen Groom, a girl alleged to be under fifteen years of age; he was adjudged guilty, and his punishment assessed at five years confinement in the penitentiary.

1. Ellen Groom, the prosecuting witness, when first carried before the grand jury, declined to testify who it was had carnal intercourse with her. She had declined to tell her mother, but at the time she was in such an advanced state of pregnancy it was known she had had sexual intercourse with someone. She was carried before the district judge, who informed her that unless she would tell with whom she had sexual intercourse he would be compelled to send her to jail. She then testified before the grand jury that appellant was the person guilty of the offense. On the trial of the case she testified that she had met appellant several times; that she had a conversation with him at the fence between their homes five months prior to the act of intercourse, and that during the day on which the intercourse took place that night she talked with him at Milam's store, where he was clerking, and agreed to meet him that night at the branch back of her home. She further testified: "On the night of this intercourse—the house in which I lived consisted of two rooms, the partition between the two rooms being a curtain cutting off the kitchen in one end, and a bedroom in the other end of the house. My mother and I slept in one bed, my sister on a pallet on the floor and my three brothers on the other bed. The night was cool, or cold, and we had a fire. I had gone to bed, and as was my usual custom, had gone to sleep. After awhile I wakened, as was also my custom after sleeping awhile, and got up and dressed while my mother and the other members of the family were asleep. I then went out the door and down to the branch and there met the defendant. I remained there only a few minutes with him and had the act of intercourse, and then returned to the house, and went again to bed. The others were still asleep when I returned to the house.

The time of this occurrence was in cool weather, or, in cold weather, I think, and the night was dark. When I returned to the house I got back in the bed with my mother." That this was the only act of intercourse she ever had with appellant, and that it occurred the latter part of April or first of May prior to the birth of her child in January. On cross-examination she could not fix the time definitely when it occurred, saying: "This occurrence was either last year or year before last. Q. You told us a while ago that it was last year or year before last; can't you be a little more definite and fix the time better than that? A. It was last year or year before last. Q. You think it was year before last, then? A. Yes, sir. Q. Then you fix it at that time? Do you remember whether it was in the spring of the year? A. It was in cool weather, I think. Q. Cold and cool weather might mean different things; can you be more definite than that? A. It was in the winter, I think."

Mrs. Groom testified to the age of her daughter, and testified that she was under fifteen years of age at the date of the alleged rape. She testified she had never seen defendant with her daughter, and that defendant had never been at her home. That she had seen him standing over at his home looking towards her place smiling, and her daughter would be looking over towards his home. On cross-examination she testified: "I do not recall that defendant ever kept company with my daughter, Ellen, before the trouble complained of, and I never saw anything between them other than what I have de-described as his smiling through the window, nor was defendant ever in my house, so far as my knowledge goes, either before or after the indictment was returned against him. My daughter never told me before the finding of the indictment that defendant was the father of her child, and I could never get anything out of her about it."

Appellant testified that he was twenty-seven years of age, a member of the church, and had never been charged with an offense prior to this time. He further testified.

"I have known Ellen Groom a year or two, but have had no acquaintance with her other than to see her occasionally going about town. I never had a conversation with her at any time that I know of, and have never been with her or gone with her anywhere, to a party or other place.

"I have worked at the Milam & Company store for about five years. I do not remember to have ever seen Ellen Groom in the Milam store, and I have never had a conversation with her in the Milam store at any time, as I now remember. She, of course, might have been in the store with her mother, or in some department of the store, but I do not recall having seen her there at any time, and I am sure that if I had seen and talked to her in the store I would have remembered it, and I did not meet her and have a talk with her at any time in the store, as detailed by her in her testimony in this case. If she was ever there I never saw her. I never at any

time had a conversation with her at the fence at her home or at my home, as detailed and referred to by her in her testimony, and I am positive in my statement that I had no conversation with her at the fence at any time. In passing to and fro about my home and in going and returning home I have seen Ellen Groom in and about her yard, and about the place somewhere, but I have never had any communication or conversation with her, other than perhaps a salutation in passing, or passing the time of day, as we call it.

"I have heard the testimony of Ellen Groom that on a certain night, about the premises, in the branch I had carnal intercourse with her. The statement is not true. I never in my life had carnal intercourse with her, and never at any time had any conversation with her relating to such a thing. I have never been thrown with her under any circumstances whatever."

Mrs. Logan testified that two days after her son was indicted she went to the home of Mrs. Groom, who met her at the gate crying, saying that appellant was not guilty, and said that Ellen said he was not guilty. That they went in the house and Mrs. Groom spoke to her about some of the school boys, and asked if witness knew the Darnaby boy, and if witness thought the Darnaby boy was old enough to get a kid, when witness replied she did not know the boy. Witness says Mrs. Groom told her she wanted the case thrown out of court, and that prosecuting witness spoke up and said appellant was not guilty. Witness says she went to Mrs. Groom's again a few days later, with Mrs. Fretwell, and that Mrs. Groom told her Ellen had never told her who was guilty, and on one of the trips Mrs. Groom had told her when they were planning who to lay it on, they started to lay it on Albert Milkerson, and she, Mrs. Groom, had said he was no good, and then said some of us were trying to lay it on Frank, and Frank had said if they did he would take his gun and shoot them up, and that Mrs. Groom had said that Ellen told her they made her swear lies on appellant. On these trips Mrs. Logan secured notes from Mrs. Groom and Ellen to the officers stating that appellant was not guilty.

Mrs. Groom denied making these statements to Mrs. Logan, and while she and Ellen admitted writing the letters to the officers, they said Mrs. Logan begged them to do so; that they did not want to be compelled to go to court, and Mrs. Logan had said if they would write the notes the case would be thrown out and they would not be compelled to go to court.

Some of the letters written, introduced in evidence, were as follows:

"Judge Oxford: Please throw this out. Enos Logan never had anything to do with me.                                Ellen Groom."

"For God's sake, don't think that I can stand it.
                                               Mrs. M. A. Groom."

"March 30. I was badly scared; I was mistaken of its being Enos Logan, and I don't want him punished, and he is not guilty, and I don't want this brought up in court. I don't want to appear in court. Please don't bring it up in court. He never had anything to do with me.                                    Ellen Groom."

"Mr. Hiner: Please throw this out of court. I don't want him punished over this and I don't want to go to court. I don't want to appear in court. Enos Logan never did anything to me.
                                    Ellen Groom."

These letters were never delivered to Judge Oxford or Mr. Hiner, and not shown to them until the day of the trial.

This is in substance the evidence in the case, and while we are always loathe to disturb the verdict of a jury, this evidence is far from satisfactory. Ordinarily, the fact that the prosecuting witness when carried before the grand jury refused, until compelled to do so, to give the name of any person as the one guilty of her undoing, would be a strong circumstance in support of her testimony, but this is true only in those instances where the facts show intimacy between them, or the witness was under the control or influence of the other. If the evidence in this case tended to show that defendant had ever associated with the prosecuting witness, was in the habit of going with or calling on the prosecuting witness, had done anything to win her affection, or was in such position as to control her actions, we would deem this a circumstance most cogent. But in the record in this case the prosecuting witness says that defendant had talked to her once at the fence, and occasionally at the store where he was clerking, all of which is emphatically denied by defendant. The prosecuting witness' mother says that defendant was never at their home, and never kept company with her daughter, and she never saw him with her. Under these circumstances we do not think the fact that prosecuting witness was reluctant in giving the name of appellant to the grand jury, is or should be a circumstance supporting her testimony, but rather that while she was trying to conceal the author of her ruin, she was still doing so, and especially would this be true if we give any credence to the testimony of Mrs. Logan and the letters written by prosecuting witness. Again, her statement that she made an appointment with appellant at the store to meet him at the branch that night; that she went to sleep in bed with her mother; woke up some time during the night; got up and put on her clothes, and went to the branch and found defendant there; that she remained only a few minutes, and returned to the house, undressed and again got in bed, and neither her mother, sister, nor her brothers awoke, is unreasonable. If she was supported in any of her statements by any other witness we might give more credence to it, but when the main fact relied on by the State for a conviction is detailed as occurring

in such an unusual and unreasonable way, and the party sought to be charged with the crime is a man twenty-seven years of age, who, during his entire life, had never before been charged with crime, and he vehemently denies the accusation, we do not believe we should permit appellant, under such circumstances, to be branded with a felon's brand. It is true that intercourse is never seen except by those participating in the act, and if the evidence of the prosecuting witness was of that character and detailed in such a way that it appeared to be probably true, we would not disturb the verdict. But in our judgment, if the statement, that in a conversation at the store she made the appointment, is true, then the statement that she went to sleep and awoke and went to the branch, at the very ·time appellant appeared at the branch, is not probable. If she went to the branch, she remained awake after going to bed, for a girl fourteen years of age, would hardly wake at the critical moment, and in the night-time, on a dark night, get out of bed and go to a branch on a mission of this kind to meet a person with whom she had never been associated. In the case of State v. Goodale, 109 S. W. Rep., 9, the Supreme Court of Missouri says, in discussing a case of this character:

"The all-important question on this appeal is whether the testimony in this case is sufficient to sustain the conviction of the defendant. The admonition of Lord Hale that 'it must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though ever so innocent,' must be heeded. While it is the law of this State, as in most others, where not modified by statute, that a conviction for rape may be sustained upon the uncorroborated evidence of the outraged female, it is nevertheless equally well settled that the Appellate Court will closely scrutinize the testimony upon which the conviction was obtained, and, if it appears incredible and too unsubstantial to make it the basis of a judgment, will reverse the judgment. While, on the one hand, it will not do to hold that because the evidence indicates a depravity not ordinarily witnessed among men, it must be rejected, because the annals of crime are replete with examples wherein the most sacred relations have been disregarded, and the testimony left no room for a reasonable doubt of the guilt of the accused, yet, on the other, many well-authenticated decisions attest that this charge has often been the result of malice and hidden motives, and the courts have refused to permit convictions to stand because of the utter improbability of the testimony, in the light of the conceded circumstances. Instinctively, the character of the accused and of his accuser is a prime consideration."

In that case the court reversed the case on account of the unreasonableness of the evidence of the prosecuting witness, although it was a case in which an uncle was charged with rape upon his niece. The evidence in this case is far more unreasonable than the evidence in that case, and in this case, as in that, the record would give to

defendant an unimpeachable character from his youth up. When a man twenty-seven years of age shall seek to win the affection and confidence of a girl, and by that means accomplish her undoing, he should be severely punished, and if the evidence disclosed that character of case, it should and ought to be affirmed. But when a man of good reputation has reached that age, and the prosecuting witness is a girl with whom he has never been associated and over whom he has no control and whose affection or confidence he has never sought to win, and he is charged with that character of offense, the evidence ought to be clear and convincing before he is consigned to the penitentiary. It is true that the unsupported testimony of the girl alone is sufficient to sustain a judgment of conviction, but that evidence should bear evidence of verity on its face, and not be of such a nature as of itself to create a doubt as to its reasonableness and probable truth. And when this is followed up by letters stating that defendant is not guilty, and which she admits writing, although she says they were obtained by the mother under promise that the case would be dismissed and she would not have to appear in court, the testimony is of that character that we are unwilling to permit a conviction to stand. As before stated, if the relations between her and defendant were such that it would be reasonable for her to seek to shield him, it would be different, but her testimony and the testimony of her mother state no good and sufficient reason for a desire to shield appellant, if in truth he was guilty of this great wrong. The mother at least would be outraged, and the girl would apparently be also, and desire his punishment, unless he had in some way won her affection and confidence, and this the evidence precludes. It may be upon another trial that additional testimony can be adduced, and if so, and appellant is really guilty of this offense, the punishment is none too severe, and if convincing testimony is adduced on another trial the jury will give a much more severe punishment than was meted out in this instance, we are satisfied.

2. In bills of exception it is shown that State's counsel in their argument appealed to the passion and prejudice of the jury, referring to him as a "slick duck," and "the defendant had just as well have murdered this little innocent girl as to have done what he did," and other remarks. While this is not presented in a way that we would reverse on account of the conduct of these officials, yet on another trial we hope that such criticism "that an appeal to the passion and prejudice of the jury was made;" "that it would have been just as humane to have murdered her," can not be properly made of the argument of counsel for the State.

3. Again, it is shown by a bill that the district attorney representing the State, in his closing argument, stated that "counsel for the defendant has tried to discredit and cast a reflection upon the prosecuting witness, Ellen Groom, and Mrs. M. A. Groom, because of the poverty of the Groom family," and further stated to the jury

"counsel for the defendant have stated that they, the witnesses mentioned, were not worthy of belief because they were poor and that the mother and two daughters and the three sons had all occupied the same room and had only two beds in which all of them slept," to which argument and statement of the district attorney the counsel for the defendant then and there excepted on the ground that the attorneys for the defendant had made no reflection whatever upon the witnesses named on account of their poverty or on account of the fact that the mother and the two daughters and the three sons had all occupied the same room and had only two beds in which all of them slept. This bill is approved by the court with the endorsement that no special charge was requested in regard thereto, and for this reason alone it perhaps presents no reversible error. However, it is shown in bill No. 10 that the jury while deliberating on the case, by the testimony of juryman Holmes and others, that it was mentioned in the jury room that the prosecuting witness was a poor girl, while appellant was a man of prominence and had plenty of money. The juryman added this did not influence the jury, and they were told not to discuss it as there was no evidence of these facts. The jury at this time had not agreed on a verdict. Taking the remarks of the district attorney above quoted, in connection with this evidence, it seems to have been borne fruit, for what man can say whether or not such conduct, imperceptible, if in no other way, has not affected his judgment in passing on the merits of the case?

4. It is also shown by the record that the jurors while deliberating on the case were permitted to talk over the telephone to their family and others. While the State has perhaps met the measure of proof to sustain the verdict announced in the case of Early v. State, 51 Texas Crim. Rep., 382, on the hearing of the motion for new trial, yet here and now we want to condemn the practice of the sheriff and others in charge of a jury permitting them to talk over the telephone or to talk to anyone under any circumstances except in the presence of the court, while the jury is in their charge. Article 728 of the Code of Criminal Procedure of this State provides that no person shall be permitted to be with the jury while they are deliberating upon a case, nor shall any person be permitted to converse with a juror in a felony case after he has been empaneled, except in the presence and by the permission of the court, and in no case shall any person be permitted to converse with the juror about the case on trial. It is no hardship to comply with this law, and if a person desires to communicate with his family or other person on business matters he can have the sheriff, or person in charge of the jury, do so for him, and we trust we will never again be troubled with the question of officers permitting jurors in their charge to talk over the telephone. If the trial court, when this does occur, would administer to the officer permitting it the proper punishment for permitting a

violation of this law, it would cease, and they would not have to devote day after day to hearing evidence as to whether the defendant suffered any injury by reason of the officer in charge of the jury permitting a violation of this plain provision of the Code. In this case, rather indiscriminate talking was permitted over a party line, and while, as we think, the State has perhaps shown that nothing occurred that could or did injure defendant, and for this reason presents no reversible error, and while in the opinion of some this provision of the law should not have been adopted by the Legislature, yet so long as it is the law it ought to be obeyed.

5. The other matters presented in the motion for new trial present no error, and while perhaps the matters discussed, other than the sufficiency of the evidence, would not work a reversal of the case, yet taking into consideration these matters, together with the evidence had on the trial, we are of the opinion this judgment should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I agree to the reversal, but believe there are other questions which present error.