WILL EDMONDSON v. THE STATE.

No. 1946.    Decided November 6, 1912.

**1.—Rape—Evidence—Threats.**
Upon trial of rape, testimony showing threats by the relatives of the defendant in his absence should not have been admitted.

**2.—Same—Charge of Court—Limiting Testimony—Impeachment.**
Upon trial of rape, where the charge of the court directed the jury that certain evidence was admitted on the issue of impeachment of defendant as a witness, and the same did not state what was meant by impeachment whether it was impeaching his character for honesty, his credit as a witness, or for any other purpose, the same was reversible error.    Following Elkins v. State, 48 Texas Crim. Rep., 205.

Appeal from the District Court of McCulloch.    Tried below before the Hon. Jno. W. Goodwin.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Joe Adkins* and *Woodward & Baker* and *Critz & Woodward,* for appellant.—On question of the court's charge:    Cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of rape, his punishment being assessed at five years confinement in the penitentiary.

The evidence of the prosecutrix is to the effect that she is under fifteen years of age; that she was spending the night at appellant's house; that appellant was absent attending a party or social function of some kind until about two or three o'clock in the morning. When he returned prosecutrix was in bed with his wife; that appellant upon entering the house went into the kitchen and remained a while; some thirty minutes later appellant came in the room where prosecutrix and appellant's wife were in bed and got in bed on the opposite side of appellant's wife from prosecutrix (thus throwing appellant's wife between prosecutrix and himself.    After remaining in this position a while appellant and his wife began urging prosecutrix to have intercourse with appellant.    She declined, but finally appellant's wife caught prosecutrix' hand and held her while appellant had intercourse with her.    That between that time and early morning appellant had intercourse with her three more times, and that his wife assisted him in these acts of intercourse.    There was another bed in the room beside the one occupied by the three, which she says had been prepared by Mrs. Edmondson for her husband on his return.    Her testimony is a little uncertain as to what time she went to this bed, whether it

was after the second or third act of intercourse, but she finally states she went to this bed and appellant went over there and his wife assisted him in having intercourse again. She contradicts herself flatly with reference to many of the matters about which she testified, and failed to make an outcry about the matter for quite a length of time. Finally, her pregnancy was ascertained and there was a commotion in the neighborhood. She testified in the examining trial that a young man named Regent was the author of her shame and had intercourse with her about a dozen times. She also denied appellant had ever had intercourse with her, but she again contradicts herself in stating that both of them had had intercourse with her, and again testified that Regent did not have intercourse with her, and that appellant did. That somebody had intercourse with her we take for granted inasmuch as she gave birth to a child. While this is a very peculiar case, and the prosecutrix contradicts herself in every conceivable shape, and failed for quite a length of time to make any statement about it or let it be known she had had intercourse with anybody, yet that does not do away with the fact that she had intercourse with somebody as she failed to testify that she was the subject of spontaneous generation.

Appellant testified that no act of intercourse between himself and the prosecutrix occurred and appellant's wife testified no act of intercourse occurred within her knowledge, and certainly did not occur in the bed when she was present. They also testified that on this particular night the prosecutrix, Vallie Roles, did not spend the night at their residence, but a cousin of appellant with his wife did spend that night with them. These parties testified that they so spent the night, and that the girl was not there, and did not spend the night at appellant's residence as she testified. The girl's testimony is so contradictory that it is little difficult to make of it any accurate statement. One time she swore appellant had connection with her, and then that he did not, and that Regent had connection with her; then he did not, then she swore that each one of these statements is true, and then swore they are false. To say the least of it, this is a very peculiar case. It would be difficult to understand how a wife would be particeps criminis to the extent of being a principal in the rape of a girl in her own bed and by her own husband, and four times in the course of three or four hours. This is contrary to all human experience and human observation and human character. The nearest case in point that has been called to our attention is Donoghue v. State, 79 S. W. Rep., 309; see Alcorn v. State, 94 S. W. Rep., 468. Among other cases we might cite Adkins v. State, 65 S. W. Rep., 924; Kee v. State, 65 S. W. Rep., 517. For collation of cases see Branch's Criminal Law of Texas, sec. 700, where quite a number of Texas cases are cited.

There are bills of exception reserved to the rulings of the court in admitting testimony showing threats and evidence of that sort made by relatives of appellant in the absence of appellant. Upon another

trial we are of opinion these matters should not be permitted to go before the jury.

The court gave, among other things, the following charge: "Any evidence in this case, if any, to the effect that defendant had been charged with theft of cotton, was admitted on the issue of impeachment of defendant as a witness, and for no other purpose, and you will consider said evidence, if at all, on that issue only, and you will not consider it for any other purpose whatever." Under all of the authorities that have been called to our attention this charge is erroneous. What is meant by impeachment is not stated in the charge anywhere—whether it was impeaching his character for honesty, or his credit as a witness, or his standing as a man of chastity, or any other purpose for which impeaching evidence may be introduced. Wherever impeaching testimony is admitted it must be restricted by the court to the purpose for which it was admitted. If it was for the purpose of affecting his credibility as a witness before the jury, that body must be instructed clearly that such is the purpose for which the evidence was introduced. Elkins v. State, 48 Texas Crim. Rep., 205; McKinney v. State, 49 Texas Crim. Rep., 591, 95 S. W. Rep., 504; Dean v. State, 77 S. W. Rep., 803; Howard v. State, 25 Texas Crim. App., 686; Winn v. State, 34 Texas Crim. Rep., 37; Coffman v. State, 62 Texas Crim. Rep., 88. Under all these authorities this charge was not only erroneous but fatally so.

There is another clause of the charge wherein the court instructed the jury in almost the same language with reference to the witness Coggin. What has been said above with reference to the other phase of the charge is also applicable here.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*