4. CRIMINAL LAW (§ 1097*)—STATEMENT OF FACTS—NECESSITY.

Without a statement of facts, the sufficiency of the evidence and the failure of the court to charge on various phases of the case cannot be reviewed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2862, 2864, 2926, 2934, 2938, 2939, 2941, 2942, 2947; Dec. Dig. § 1097.*]

5. CRIMINAL LAW (§ 1064*)—APPEAL—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW.

Where the failure of the court to charge on circumstantial evidence was not called to its attention by the motion for new trial, the error cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2676-2684; Dec. Dig. § 1064.*]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Jose Romero was convicted of horse theft, and he appeals. Affirmed.

Gibson & Wilson, of Pecos, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of horse theft, his punishment assessed at two years' confinement in the penitentiary.

Overruling the motion for new trial on the 29th of May, the court adjourned on the 31st. The court entered an order granting 30 days' time in which to file statement of facts. After the expiration of the 30 days, another order was entered granting 30 days' additional time. The filing of the order was dated back so as to make it come within the time of the previous 30 days. Appellant, being unable to pay the stenographer, filed a pauper's affidavit. The stenographer was ordered to make out the statement of facts in duplicate, which he did by questions and answers. This was filed in the trial court on the 5th of July, 30-odd days after adjournment of court.

[1, 2] Appellant claims he was deprived of a statement of facts by reason of these matters, and apparently bases this upon the idea that the second order for 30 days was not legal, and, the stenographer not having filed the statement of facts within the original first 30 days, it was illegal, and he has been thereby deprived of a statement of facts. We cannot concur with this idea. The act of 1911, p. 267, provides that the statement of facts may be prepared and filed at any time before time for filing the transcript in this court, and the decisions of this court construing this article have held that appellant had 90 days within which to file statement of facts. It is unnecessary to cite these cases. The statement of facts transcribed by the stenographer shows to have been filed on the 5th of July, 1913, but neither agreed to by counsel nor approved by the judge. There still remained the difference between the 5th of July and the 90 days, which would have terminated on the 31st of August, in which appellant could have pre-

pared a statement of facts had he used ordinary diligence. A transcript of the evidence made by the stenographer was filed with the papers in the clerk's office, and accessible to defendant and his counsel. We therefore hold, under the circumstances, that he has not been deprived by the court or any of the officers of having his evidence brought properly before this court.

[3] In the latter part of August affidavits were filed to the effect that the court during the trial absented himself during the argument before the jury for an hour or such matter, and was not in the courtroom. These affidavits narrate the circumstances and things that occurred during the absence of the judge. It is further alleged that this was one of the grounds of the motion for new trial; but, with some actual or tacit understanding with the court, this matter was not urged for new trial. This matter, filed as it was the latter part of August, comes too late. To this action of the court proper exceptions should have been taken and reserved during the term time, and filed within such time as is authorized under the law with reference to filing bills of exception. The affidavits were filed more than 80 days after adjournment of court. Coming in this way the question cannot be considered on appeal.

[4] There are some matters presented in the motion for new trial as to the sufficiency of the evidence and failure of the court to charge certain phases of the law which are claimed to have been applicable to the facts. These cannot be considered in the absence of the evidence.

[5] Another matter is urged in the brief, but we fail to find it in the motion for new trial; that is, that the court's charge on circumstantial evidence is not sufficient. This matter was not called to the attention of the court in the motion for new trial, and therefore, under the prior decisions of this court, this would come too late, unless it was of that fundamental nature which authorized an illegal conviction.

As the record presents these matters, we are unable to review them; therefore the judgment is affirmed.

---

PORTER v. STATE.

(Court of Criminal Appeals of Texas. Nov. 19, 1913.)

1. CRIMINAL LAW (§ 322*)—JUDICIAL NOTICE —JUDGES OF DISTRICT COURT.

The Court of Criminal Appeals will take judicial notice of the date of the incumbency and resignation of a certain judge, and also of the date on which his successor was appointed and took the oath of office.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 728; Dec. Dig. § 322.*]

2. CRIMINAL LAW (§ 1092*)—BILL OF EXCEPTIONS—APPROVAL.

Under the statute, only the judge who tried a criminal case could approve a bill of

exceptions and statement of facts, and his successor could not do so.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2803, 2829, 2834–2861, 2919; Dec. Dig. § 1092.*]

3. GRAND JURY (§ 38*)—PRESENCE OF BAILIFF.

The fact that the county attorney, while the grand jury was interrogating witnesses in the grand jury room, had with him in the room a regular bailiff as his stenographer taking down testimony, though he was not present while the grand jury was discussing the finding of a bill or voting, would not invalidate the indictment so as to be a ground for quashing it.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 81; Dec. Dig. § 38.*]

Appeal from Criminal District Court, Dallas County; Barry Miller and W. L. Crawford, Jr., Judges.

Will Porter was convicted of murder, and appeals. Affirmed.

C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. On December 31, 1912, the grand jury of Dallas county indicted appellant in criminal district court No. 2 of Dallas county for the murder of Jesse Franklin, alleged to have been committed on December 29, 1912. He was tried at the January term, 1913, and the verdict rendered on January 16th assessed his punishment at death. The term of the court at which he was tried convened on January 6, 1913, and adjourned on April 5, 1913.

[1] The record shows, and we judicially know, that Judge Barry Miller was the judge of that court and that he did not resign as such judge until February 10, 1913. We also judicially know that Judge W. L. Crawford, Jr., was appointed and took the oath of office as the successor of Judge Miller on March 1, 1913. The record further shows that all of appellant's motions for new trial and in arrest of judgment were acted upon by Judge Miller during his term of office, and that the notice of appeal was given on February 1, 1913, by which and at which time the jurisdiction of this court attached. In other words, the record shows that the whole case was tried and everything in connection therewith was had before Judge Miller while he was the judge of that court and before his resignation took effect, and that Judge Crawford had nothing to do with any of these matters. His connection with the case and everything in connection therewith is shown to have begun for the first time on March 3, 1913, when he granted an extension of time to appellant for filing the statement of facts and bills of exceptions, and that his only connection with the case or any proceeding therein were on and after March 3, 1913.

There is filed with the record what purports to be a statement of facts and one bill of exception. The bill of exception was approved by Judge Crawford and not by Judge Miller. It shows to have been signed and approved and ordered filed by Judge Crawford on April 30, 1913, and further shows on its face that it was to the overruling of appellant's motion made, heard, and acted upon by Judge Miller on February 1, 1913, in arrest of judgment, claiming the indictment was insufficient, because a person not authorized by law and not a member of the grand jury, nor an attorney connected with the prosecution in the case, was present while the grand jury was investigating and deliberating on this cause as to whether or not they would find an indictment against appellant. It further shows that Judge Miller and not Judge Crawford heard evidence on said motion at the time he acted thereon and overruled the same.

[2] The purported statement of facts was filed in the lower court on April 26, 1913. It was not approved by Judge Miller but shows to have been approved by Judge Crawford. Under this state of facts, as shown by this record, the Assistant Attorney General makes a motion to strike out the said bill of exception and statement of facts. This question has heretofore carefully been considered by this court in the case of Richardson v. State, 158 S. W. 517, wherein this court, after citing the statutes, held that the judge of the court who tried the case, before whom such proceedings were had, could alone approve bills of exceptions and statements of facts, and that his successor could not do so. We are thoroughly satisfied with the holding and opinion in that case, and in accordance therewith and with the statutes we are under the necessity of sustaining the motion of the Assistant Attorney General, which we do, and therefore strike out the said bill of exception and statement of facts.

Notwithstanding this, as this is a case where the death penalty is assessed we have carefully read the said bill of exception and purported statement of facts and all of the questions raised by appellant in connection therewith; and, if we could properly consider said purported statement of facts, it would be amply sufficient to show: That on December 29, 1912, about 4 p. m., the appellant and deceased were in a barber shop in the city of Dallas, Tex.; that immediately preceding the killing for some time they had been gambling together, playing against one another; that the deceased had been doing the winning and wanted to quit and did quit the game; that appellant objected to this and became incensed because deceased would not longer continue gambling with him; that the deceased, after getting up from a bathroom wherein they had been gambling, proceeded to leave appellant and procure and start to put on his overcoat; that, before he could complete putting on his overcoat, appellant said to him, "I won't allow any God damn son of a bitch to treat me wrong," at once went to his own overcoat, only a step or two from him, procured a six-shooter, and began shooting at the deceased therewith; that the first shot struck the deceased near the cen-

ter of the back, going entirely through his body, coming out near his navel; that the deceased then partially turned around and that appellant again shot him through the left arm and then in the left side near or through the heart; that, after the deceased had fallen on the floor, appellant shot him again, then searched his pockets, and took the deceased's money out of his pockets, one dollar in silver dropping on the floor which was found soon afterwards when the body of deceased was removed. The appellant himself swore that he shot and killed the deceased, firing five or six times at him, but he claimed that he did so to protect himself because he thought deceased was attempting at the time to get his knife and attack him (appellant); that he did not see any knife and did not see the deceased get any knife, or open any knife, but that he knew he was a dangerous and violent man; that he had on one or two occasions shortly before then seen the deceased have a fight with others in which he attempted to use or did use a knife; and that about a month prior to this, appellant himself had a fight with him, at which time he (deceased) attempted to use a knife on him. Several eyewitnesses for the state testified that at the time appellant killed the deceased the deceased did not have any knife, did not attempt to get any, and made no assault or attempted assault on appellant, and did not threaten to assault him, but that the appellant shot the deceased in the back the first time without any provocation at all and continued shooting him rapidly until he had killed him, as stated above. The evidence by the state, if we could consider it, shows, without doubt, murder in the first degree. The preponderance of it is against appellant's claimed self-defense, and it does not show, or tend to show, manslaughter. The court, however, charged on manslaughter in the only way that it could be claimed with any show of reason to be raised. He charged on self-defense in appellant's favor fully and correctly, to which there is no complaint. The claimed insulting language by deceased to appellant, immediately before the killing, even if it had been used, does not show to have been the cause of the killing but rather excludes that idea and the court was not called upon to submit manslaughter on that theory. Even such language would not be adequate cause. Fitzpatrick v. State, 37 Tex. Cr. R. 20, 38 S. W. 806.

[3] If we could consider the said bill of exceptions at all, it shows this: That the county attorney had with him in the grand jury room, at the time the grand jury was interrogating the witnesses in regard to this offense, Frank Barcum, who was a regularly and duly sworn bailiff for said grand jury, as his stenographer, taking down the testimony of the said witnesses; that he was not present while the grand jury was discussing the propriety of finding a bill of indictment, nor while the grand jury was voting on that question. This court has repeatedly held that under such circumstances the indictment was a valid one and should not be quashed on that account. Sims v. State, 45 S. W. 705; Wilson v. State, 41 Tex. Cr. R. 117, 51 S. W. 916; Haywood v. State, 61 Tex. Cr. R. 96, 134 S. W. 218. So that in no event, even if we could consider it, would the bill of exceptions present any error in this case.

In no way, whether with the bill of exceptions and statement of facts fully considered, or without either or both of them, does the appellant point out any reversible error whatever in this case. The judgment will therefore be affirmed.

---

# MEMORANDUM DECISIONS

ANDERSON v. STATE. (Court of Criminal Appeals of Texas. Oct. 29, 1913.) Appeal from Tarrant County Court; Jesse M. Brown, Judge. Frank Anderson was convicted of assault on a woman, and appeals. Affirmed. C. E. Lane, Asst. Atty. Gen., for the State.