ENNIS TINKER v. THE STATE.

No. 7269.   Decided January 31, 1923.

Rehearing Granted June 27, 1923.

1.—Rape—Indictment—Age of Female.

Where defendant moved to quash the indictment upon the ground that it charged carnal knowledge of a female under the age of fifteen years, and that the age of consent as it now is, is eighteen years, same was correctly overruled.   Following Young v. State, 230 S. W. Rep., 414.

2.—Same—Indictment—Grand Jury—Persons not Authorized to Be Present.

This court has held in regard to the presence of persons acting in various capacities during the investigation of crimes by the grand jury, that such presence extending no further than while testimony was being had before the grand jury, would not come within the forbiddance of such presence while the grand jury was deliberating upon the finding of the indictment, and there is no reversible error.   Following McElroy v. State, 49 Texas Crim. Rep., 604, and other cases.

3.—Same—Severance—Different Offenses.

Where defendant moved for a severance and that his co-defendant be first placed upon trial, and it appeared from the record that the latter was indicted for rape upon the sister of the alleged injured female herein, which presented a different offense, the motion was correctly overruled.

4.—Same—Preliminary Motion—Written Statements.

In the absence of a showing that the alleged written statements were before the jury, the court correctly overruled a motion to compel State's attorney to furnish defendant with all written statements made by any witness in the case, which were in his possession, as well as a list of the State' witneses.

5.—Same—Child Witness—Practice in Trial Court.

Where the prosecuting witness was shown to be about thirteen years old at the time of the trial and seemingly understood the obligation of an oath, and there was no abuse of discretion shown, there is no reversible error.

6.—Same—Conduct of District Attorney.

Where appellant's attorney claimed .that the remark of the district attorney in desisting from further questioning the witness was in a sneering and suggestive way, but the court qualified the bill that it was not so, there was no error.

7.—Same—Evidence—Other Transactions.

Upon trial of rape there was no error in introducing testimony that after the defendants left with the girls alleged they obtained whisky which they just put into the car and carried with them, although it involved another offense.

8.—Same—Moral Turpitude.

It was competent for the State to ask appellant while on the witness stand, testifying in his own behalf, if he was not under indictment for a felony.

9.—Same—Rehearing—Witness under Rule—Additional Testimony.

Where, upon appeal from a conviction of rape, it appeared from the record that the rule was invoked and the witnesses were placed under the rule, and that thereafter the proscuting witnesses upon whom the alleged rape was committed were permitted, in the presence of each other, to consult with the district attorney and officers touching the details of the case and the testimony which they had already given, and that thereafter they were again called to the witness stand and gave additional damaging facts against the defendant, held, that the rule was violated, and the judgment must be reversed and the cause remanded.

Appeal from the District Court of Cass. Tried below before the Honorable Hugh Carney.

Appeal from a conviction of rape; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*C. R. Newland* and *I. N. Williams* for appellant.—On the question of severance, Anderson v. State, 56 Texas Crim. Rep., 367; Wolf v. State, 46 id., 231.

*R. G. Storey*, Assistant Attorney General, for the State.—Cited, cases in opinion.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Cass County of the offense of rape, and his punishment fixed at confinement in the penitentiary for a period of twenty years.

The record herein shows without dispute that appellant and one Adams went with two little girls from Mount Pleasant in Cass County, Texas, in a car to Texarkana, Texas. They left Mount Pleasant late one afternoon. Some time in the night they reached Atlanta in Cass County and went to a hotel and spent the night. Appellant registered the party as "Adams, son and daughters." They called for a room with two beds, into which the entire party went and remained till morning. Appellant contends that he and Adams slept in one bed and that the two girls occupied the other. He is charged with rape upon the younger of said girls who, according to the State's theory, was at that time but twelve years of age. She testified that she and her sister were under the influence of liquor given them by appellant and Adams, and that she went to bed with appellant, having on both her outer and underclothes. She said she was wakened by his hugging her up during the night and that thereafter he had two acts of intercourse with her before morning. She said that when he woke her, she discovered that he had removed her drawers. She further testified that when she got up in the morning she bathed her

private parts and there was blood and other matter upon her limbs. The other sister testified that she saw the alleged injured girl bathing her private parts the next morning and saw blood on her limbs. The landlady of the hotel testified that she found in the room the next morning after the party had gone, the drawers of a young girl. Physicians who examined the girls at Texarkana testified that they found the private parts of the alleged injured girl much enlarged and that indications pointed to the fact that she was both capable of indulging in sexual intercourse with a man and that she had been penetrated at some time in the past, though said private parts did not indicate recent violent penetration.

Appellant moved to quash the indictment upon the ground that it charged carnal knowledge of a female under the age of fifteen years, and that the age of consent as it now is is eighteen years. This question has been decided against appellant's contention. Young v. State, 89 Texas Crim. Rep. 230, 230 S. W. Rep. 414.

Appellant also moved to quash the indictment upon the ground that persons not authorized by law, were present with the grand jury when it was deliberating upon the finding of the instant indictment. It was shown and admitted that because of the timidity and youth of the alleged injured female she was accompanied into the grand jury room by the sheriff of the county in which she lived, who was present while she was being questioned. It was also shown without contradiction that no one was present with the grand jury when they were deliberating upon the question of the finding of the indictment herein. This court has held in regard to the presence of persons acting in various capacities during the investigation of crime, that such presence extending no further than while testimony was being had before the grand jury, would not come within the forbiddance of such presence while the said grand jury was deliberating upon the finding of the indictment. McElroy v. State, 49 Texas Crim. Rep. 604; Moody v. State, 57 Texas Crim. Rep. 76; Porter v. State, 70 Texas Crim. Rep. 71, 160 S. W. Rep. 1194. See other cases cited in Branch's Ann. P. C., Sec. 486. Inasmuch as the presence of any person other than the grand jurors at the time said body was deliberating upon the return of the indictment herein, is negatived by the facts shown, the contention is without merit.

Appellant moved for a severance and that Adams be first placed upon trial. Adams was indicted for rape upon the sister of the alleged injured female herein. We do not deem this to bring the case within the comprehension of our statutes in regard to severence. It is provided by Art. 726 C. C. P., that when two or more defendants are jointly prosecuted, they may sever; it is also provided by Article 727, id., that where two or more defendants are prosecuted for an offense growing out of the same transaction, either may file his affidavit that the evidence of the other party or parties is material for

96 T. C.—10

his defense, etc., and the person whose evidence is thus desired may first be tried. It seems to be held that by the use of the term "transaction" in the statute above referred to, is meant that the parties must be indicted for the same offense. Ray v. State, 43 Texas Crim. Rep. 234. The subject has recently been discussed by this court in Cotton v. State, No. 6503, opinion delivered November 15, 1922, which holds adversely to appellant's contention. It would seem beyond question that appellant being charged with rape upon Maggie Ray and Adams with rape upon Neoma Ray, that said parties were not charged with the same offense.

It is urged that the court should have granted a motion made by appellant to compel the State's attorney to furnish to the defendant all written statements made by any witness in the case, which might then be in possession of said attorney, as well as a list of all the witnesses expected to be used by the State. The written statements were not before the jury, and we are of opinion that the refusal of such motion presents no error.

It is also urged that the witness Neoma Ray was shown by the preliminary examination to be incompetent. Said witness stated as follows upon said preliminary questioning:

I understand what I am doing now, I am just swearing against old man Adams, is all I know, and that means that I am going to tell the truth. I know the difference between a story and the truth, I can tell a story and help him out and tell the truth and it won't. I know which is right and which is wrong, it is right to tell the truth."

This witness was shown to be about thirteen years old at the time of the trial, and we deem it no abuse of the discretion confided in the trial court to hold her competent as a witness.

It is shown by a bill of exceptions that while Neoma Ray was testifying, the attorney for appellant interposed an objection, in response to which and before the court ruled, the State's attorney remarked: "All right, if he thinks it is damaging I will not insist." Appellant's objection to this seems to be based upon the proposition that said remark was in a sneering and suggestive way, but the qualification of the trial court consists of a statement that the manner of the State's attorney was not as stated in said bill. We do not perceive any error in the matter set out in said bill as so qualified.

Upon the trial of the case the rule was invoked. Said trial extended over some days. The witness Neoma Ray was called back to the witness stand after having testified in chief, and when so recalled gave in testimony the fact that at Atlanta on the morning after the night spent in the room with said two men, she saw her sister Maggie, the alleged injured party in the instant case, wash blood from her legs and private parts. Cross-examining this witness appellant's counsel developed the fact that during the trial the district attorney, accompanied by the sheriff, came to the jail where witness and her

sister Maggie were staying during the trial, and talked to them about their testimony, said conversation being had with both girls at the same time. The qualification of the trial court to .this bill of exceptions contained the statement that it is his custom to allow the district attorney to talk to witnesses under the rule in the presence of the sheriff, and that this being done, the trial court was of opinion that no such serious violation of the rule was shown as would justify him in rejecting the testimony of said witness. These matters are largely confided to the discretion of trial courts, but unless upon complaining thereof it is made to appear evident to us that there is no likelihood of injury to him arising from an abuse of such discretion, this court would not feel inclined to direct a reversal based upon such contention. We do not believe appellant brings himself within this rule. What we have just said also applies to the appellant's further objection to testimony from the witness Maggie Ray who was introduced by the State and testified over an objection made by appellant based on the fact that she had discussed the case with the district attorney in jail in the presence of Neoma Ray.

There is a further objection to testimony of the fact that after leaving Mount Pleasant with said two children, the two men involved in the transaction obtained whisky which they put in the car and carried with them. The fact that the development of a given transaction relied upon by the State as constituting a crime, brings out other facts which of themselves constitute an independent crime, does not per se make the evidence of such independent crime inadmissible. The State relied upon the proposition that these two men started out together to debauch these children, and that as a part of and in furtherance of said purpose, they procured and gave to said children intoxicating liquor. The fact that the transporting of such liquor would constitute an independent crime, would not seem to make it inadmissible in the development of the case against appellant for rape.

We deem it competent for the State to ask appellant while on the witness stand testifying in his own behalf, if he was not under indictment for a felony. Such testimony has always been held by us admissible as affecting the credibility of the defendant as a witness.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

MORROW, PRESIDING JUDGE.—We are urged to reconsider the ruling to the effect that there was no harmful error in receiving the testimony of the prosecutrix, Maggie Ray, and her sister Neoma Ray, after they had conferred with each other and with the district attorney and others in the presence of each other.

We understand from the two bills of exception on the subject

that in opening the case, Neoma Ray was introduced by the State and at the close of her testimony, the court took recess until the following morning.

Before the recess she testified in substance that she and her sister, Maggie, together with Adams and the appellant traveled in an automobile from Mt. Pleasant to Texarkana, stopping over night at Linden or Atlanta; that she was given whisky by Adams; that they all occupied the same room in the hotel. This quotation is taken from her testimony:

"I can't tell you whether it was Linden or Atlanta we come through; we stayed all night at Linden or Atlanta one, some town where we stayed all night. I don't remember whether we stayed all night in a hotel or in a car on the road. I was in a rooming house when I woke up the next morning. When I woke up the next morning, Adams and Maggie and Ennis Tinker was in the room with me. I don't remember what time it was when I got up the next morning, along about 7:30 I reckon, that is what Maggie told me. Then we went to Texarkana in a car, Maggie and Adams and Ennis Tinker and me. Maggie woke me up that morning. I was in bed when she woke me up I reckon, in bed with Adams. Maggie had slept there in that house that night I reckon. She got up a little before I did. I saw her when she got out. I was in bed with Adams and then the four of us got up and went to Texarkana."

On the opening of court on the following morning, she gave this further testimony:

"That in Atlanta before she and her sister, Maggie Ray, and defendant Tinker and Adams started on their way to Texarkana, that she saw that very morning her sister, Maggie Ray, wash off of her legs and private parts some blood; that she saw blood on Maggie's legs; that Maggie washed that morning after spending the night in Atlanta."

Upon her giving this additional testimony, counsel for appellant developed this testimony:

"On cross-examination of this witness, when asked if that was the first time she ever told that, the witness replied: 'I told it to the district attorney last night.' Defendant's counsel replied: 'You told it last night?' and the witness answered: 'My sister did.' Defendant's counsel then asked: 'You heard her tell it?' and the witness answered 'Yes, sir.' And on further questioning, the witness stated that the district attorney and the county attorney and the sheriff were present and questioned her and her sister, Maggie Ray, down at the jail last night and questioned them and talked to them while they were together; and also that Sheriff Reeves of Titus County was present but retracted the statement as to Reeves being present and stated he was on the front porch."

A motion to exclude the supplemental testimony was made on

The landlady in the hotel at Atlanta cleaned the room the next morning after it was occupied by appellant and Adams and the two girls. She found no stains of any kind on the beds but found a pair of children's pants in the room.

It is to be observed that the evidence was conflicting at every point. Touching the age of the girls, there was evidence, both direct and circumstantial, to the effect that they were over and that they were under the age of fifteen years. The same is true with reference to their previous chastity and of the happenings on the journey from Mt. Pleasant to Texarkana. This latter is notably true, due to the numerous denials made by both of the girls under oath in the several investigations that were made antecedent to the present trial and of the examination of the prosecutrix by the physician.

Both this court and the Supreme Court have frequently taken note of the necessity for careful scrutiny of the evidence and manner of trial in cases of this character. In the case of Davis v. State, 42 Texas 229, it is said:

"The instruction of the court, to the extent to which it went, is unquestionably strictly accurate and correct. In view, however, of the nature of the case, the passion and feeling, if not prejudice, which such a charge as that preferred in the indictment is calculated to arouse, and the character of the essential question upon which its proper determination evidently turned, and meagre, indefinite, and, to some extent, at least, unsatisfactory, if not contradictory evidence, from which the conclusion of the jury was to be drawn, we cannot but think the charge of the court was neither so full nor perspicuous in directing the attention of the jury to the real issue in the case as it might and should have been."

And from the opinion of Judge Willson, speaking for this court in Gazley v. State, 17 Texas Crim. App. 277, we quote:

"And there may be a conviction of this offense even upon the uncorroborated testimony of the injured female, although she be a child under the age of ten years. (2 Bish. Cr. Law, 968; 1 Russ. on Crimes, 9th ed., 931.) But all the authorities agree, and especially in a case where the injured female is a young child, that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence, with all remote and near circumstances and probabilities, in cases where the testimony of the injured female is unconfirmed by other witnesses. And it has been well said that 'it should be the care of the prosecuting officer, in every case of this sort, to seek carefully for circumstantial evidence tending to confirm the main witness.'"

This view of the court has been given expression in cases holding the evidence insufficient, as was done in Gazley's case, supra. See also Montresser v. State, 19 Texas Crim. App. 281; Kee v. State, 65 S. W. Rep. 517; Adkins v. State, 65 S. W. Rep. 925; Donoghue v. State, 79 S. W. Rep. 309; Dusek v. State, 48 Texas Crim. Rep. 519;

Alcorn v. State, 94 S. W. Rep. 468; Logan v. State, 66 Texas Crim. Rep. 506, 148 S. W. Rep. 713; Edmondson v. State, 68 Texas Crim. Rep. 113, 150 S. W. Rep. 917; Draper v. State, 57 S. W. Rep. 655; Elam v. State, 20 S. W. Rep. 710; Blair v. State, 56 S. W. Rep. 622; Duckworth v. State, 42 Texas Crim. Rep. 75; Galaviz v. State, 82 Texas Crim. Rep., 377, 198 S. W. Rep. 947; Smith v. State, 86 Texas Crim. Rep., 455, 217 S. W. Rep. 156. This has also been emphasized in passing upon inflammatory arguments and the manner of conducting the trial, as in Venable v. State, 84 Texas Crim. Rep. 354; also to ·the abuse of discretion with reference to enforcing the rule touching the separation of witnesses. Crosslin v. State, 90 Texas Crim. Rep. 467.

Our statute concerning the separation of witnesses by placing them under the rule (Art. 719, C. C. P.) has been the subject of much discussion in the reports, and generally speaking, the holding is that the discretion of the trial court with reference to enforcing the rule is a broad one, not to be revised on appeal, except in cases of abuse, but that it should not be substantially abridged by any arbitrary action. See cases listed in Vernon's Tex. Crim. Stat., Vol. 2, p. 399; also Bishop v. State, 81 Texas Crim. Rep. 97.

In the case of Welhausen v. The State, 30 Texas Crim. App., 626, this court entered a reversal because the trial court admitted in evidence the testimony of a witness who had violated the rule with the connivance of the deputy sheriff. From the decision, this is quoted:

"That these provisions of the law were most flagrantly violated can not be questioned, and violated not only by the witness, but by the chief deputy sheriff. While it is true that the trial judge is invested with a wide discretion in all matters relating to this procedure, and that such discretion will not be revised on appeal unless it has been abused, the right to have the witnesses under the rule should not be denied or substantially abridged at the arbitrary discretion of the judge."

An example is also found in the case of Heath v. State, 7 Texas Crim. App. 464, from which we quote:

"While the law invests a large discretion in trial judges as to the examination of witnesses and the enforcement of the rule when the same has been requested by either party, yet this discretion is not arbitrary, nor is the statute giving the right merely directory and to be disregarded at pleasure. The right to enforce the rule is a right given by law, and it should neither be denied nor substantially abridged at the arbitrary discretion of the presiding judge. *Being a right guaranteed by law, a defendant should not after a request for its enforcement be deprived of its benefit, unless it should clearly appear that no possible injury could result to him from its relaxation.*"

The abuse of discretion in excluding or receiving the testimony of a witness who has violated the rule is a matter of difficulty, sub-

ject to some contrariety of opinion, and obviously determinable upon the facts of each case. A witness may be punished for violating the rule, but generally speaking, the conduct of the witness ought not to deprive the party calling him of the benefit of his testimony. To do so, is to punish the party, who is not at fault, and not the witness who disobeyed the court. See Bishop's New Crim. Proc., Vol. 2, page 1191. The reason for this rule does not apply, nor does the rule operate in favor of one who has brought about, connived at or participated in the disobedience of the witness.

It is said by the Supreme Court of Missouri in State v. Gesell (124 Mo. Rep. 536) that "if the party who desires the testimony of the disobedient witness, has participated in his disobedience or has been guilty of connivance at the fault of the witness, that is to say, has been guilty of voluntary oversight or 'passive consent,' while the witness by his presence was violating the rule, all authorities agree he should not be allowed to testify." See also Jackson v. State, 14 Ind. 327; Hubbard v. Hubbard, 7 Ore. 42; Kelly v. Atkins, 14 Colo. App. 208; Murray v. Allerton, 91 N. W. 518. The opinion of this court in Welhausen v. State, 30 Texas Crim. App. 626, quoted above, is to the same effect.

In the case in hand, the State relied upon the testimony of the prosecutrix and her sister. They were placed under the rule at the request of the State. There was much conflict in the testimony, as indicated, and many contradictory statements by both of the eye-witnesses. Appellant denied the offense. The doctor-witness testified that his examination revealed no evidence of recent intercourse with the prosecutrix; that if the alleged act of intercourse was the first in the experience of the girl, it was unlikely that it could have been accomplished without pain or bloodshed. The linens upon the beds were shown by the State's witnesses, without dispute, to bear no bloodstain. The doctor based his opinion partly on the absence of any secretion or semen, but stated that if the organ has been washed after the intercourse, this would detract from the certainty of his opinion upon that phase of his testimony. Before the recess of court, the witness Neoma Ray, upon her complete examination, gave no testimony to the effect that the organ has been washed, and there was no evidence of blood disclosed. The witness, Maggie Ray, the prosecutrix, did not testify until after the recess. During the recess, both of the witnesses—Neoma and Maggie Ray—were examined in the presence of each other, and as stated in one of the bills, the whole case was gone over by the witnesses in company with each other and in the presence of the district attorney, the county attorney, and according to some of the testimony, in the presence of the sheriff. It can hardly be questioned that the interview with the two witnesses in the presence of each other touching the details of the case and their respective testimony, was a violation of the rule and the instruction

of the court that they should be kept separated and should talk to no one save the attorneys and not within hearing of any other witnesses. After this interview, in which the State's attorney participated, the witness, Neoma Ray, was recalled and testified to new, pertinent, and damaging facts, supporting the State's case, corroborating the prosecutrix and breaking down the defense.

This the court refused to exclude upon the motion of the appellant and permitted the calling of Maggie Ray, who corroborated her sister, who gave testimony, which, if believed, strongly supported the State's case and tended to minimize the testimony of the doctor in that he said that the washing of the parts would have detracted from the value of his opinion and that the presence of blood would have done likewise. Previous to this transgression of the rule, there was no testimony of blood; no testimony of washing, notwithstanding the State had developed its case through the testimony of the witness Neoma Ray. The court in qualifying the bill said that it was his custom to allow the district attorney to talk to witnesses under the rule in the presence of the sheriff, and that in the instant case the court was of the opinion that the departure was not harmful to the appellant. There is no suggestion in the qualification that the rule was not violated, nor that the officer of the court had not participated by talking to the two witnesses in the presence of each other; nor do we find any basis for the opinion that no injury resulted. Doubtless the prosecuting officer was prompted by good motives, but his zeal, in our judgment, led him beyond the proprieties. The testimony which came after the conference in violation of the rule was in our judgment, important. It had not previously come to light so far as the record reveals. On the contrary, the opposite is indicated. That it was calculated to injure the appellant is manifest. The importance of the matter was not brought pertinently to the attention of this court at the time the original opinion was written, and it was then assumed that the act was merely one within the discretion of the court. However, upon a re-examination of the record and a more mature consideration of the matter, we are of the opinion that the procedure was not conducive to a fair trial, and that in view of the verdict assessing practically a life sentence against the appellant, a new trial should have been accorded him. For this reason, the affirmance heretofore entered should be set aside, the motion for rehearing granted, the judgment of the trial court reversed and the cause remanded. It is so ordered.

*Reversed and remanded.*