### Bobbie McGregor v. The State.

No. 4873.   Decided February 13, 1918.

**Keeping Bawdy House—Indictment—Grand Jury—Persons in Grand Jury Room.**

Where, upon motion to quash the indictment, the evidence showed that in the presence of the persons, who were not members of the grand jury and who were present with it, there were deliberations, within the meaning of the statute, of the grand jury as to whether an indictment against the defendant would be returned or not; that the grand jury was in possession of evidence upon which the indictment was found; that they were undecided as to finding such indictment, and that they had under consideration the accusation against the defendant and others, the motion should have been sustained.

Appeal from the County Court of Tom Green. Tried below before the Hon. Chas. T. Paul.

Appeal from a conviction of keeping a bawdy house; penalty, a fine of two hundred dollars and twenty days confinement in the county jail.

The opinion states the case.

*Anderson & Upton,* for appellant.—Cited Stuart v. State, 35 Texas Crim. Rep., 440.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant's conviction was for keeping a bawdy house. A motion to quash the indictment was made, and the evidence heard on the motion preserved. The motion asserts that unauthorized persons were with the grand jury during its deliberations touching the indictment. The evidence taken is too long to give in detail. It appears that the grand jury, while in session, had under consideration the subject of bawdy houses for a couple of days. During this time there was before the grand jury on the subject Mr. Allen, the sheriff; Mr. Snow, chief of police; Mr. Jackson, an attorney; Mr. Curtsinger, county attorney; Mr. Collins, Mr. Thomas, Mr. Van Ketchum, and Mr. Morgan, none of whom were members. Some of these parties were witnesses, and one of them was the district attorney and another the county attorney. Whether the others were witnesses or not is not disclosed. It appears that there had been some previous prosecutions for keeping bawdy houses, and that an injunction had been obtained against some persons keeping them, and that the injunction had been dissolved. These matters were discussed by the parties before the grand jury and the grand jurors, and the general subject of the best way to deal with bawdy houses was discussed. It appears that the appellant and others were under consideration; that their names had been given the grand jury as persons keeping bawdy houses.

The sheriff says the grand jurors talked about whether they would indict these women running bawdy houses or go the injunction route. The grand jury was discussing which was the best way to proceed, whether through injunctions or indictments. He said while he was present there was a discussion between one of the members of the grand jury and the county attorney or district attorney with reference to the character or sufficiency of the evidence necessary in such prosecutions, the discussion being rather an argument, the attorney entertaining one view and the juror another as to the character and sufficiency of the evidence.

The chief of police testified he was before the grand jury, and that the bawdy house matter was under discussion; that he entertained different views from some members of the grand jury as to the best method of dealing with the matter, going in his testimony into some detail as to the discussion between himself and one member of the grand jury as to whether it would be better to indict or to seek an injunction against the parties, including appellant, who was mentioned by name.

The foreman of the grand jury said, in substance, that the discussion of the matter was not specifically with reference to the appellant, but with reference to the general subject of dealing with bawdy houses in

San Angelo. He said that if the propriety of finding an indictment instead of proceeding by injunction was discussed by the grand jury while others were present, it was while Mr. Collins or Mr. Jackson was present. He thought a discussion before the peace officers had reference mainly to previous experiences and prosecutions of that kind; that they gave their opinion to a certain extent about methods; that he did not think the matter was discussed before Mr. Allen, the sheriff, but it might have been before Mr. Snow, the chief of police, and that it was discussed with Mr. Collins or Mr. Jackson, or one of them; that is, the propriety of finding a bill of indictment or injunction, and that he could not say whether Mr. Curtsinger, the county attorney, was present then or not. That the county and district attorney were in and out. That in the talk while some of these parties were present one of the jurors talked so loud that he had to be requested to modify his tone. This discussion related to the sufficiency of the evidence to warrant conviction. That the appellant was one of the parties under discussion, "and it was discussed there, under the evidence we had there, whether we would return bills of indictment or let the matter be handled by a writ of injunction, and that was in the presence of Mr. Collins, who was not a member of the grand jury," and Mr. Curtsinger, the county attorney; that he was not sure that both were present at the same time, and he thought Mr. Jackson, an attorney, was present at one of these discussions as to the propriety of finding an indictment.

Mr. Coleman, one of the grand jurors, said they had the names of the persons whom they understood were running bawdy houses, including appellant, but they were not considered or discussed individually; that they had evidence before the grand jury with reference to the matter, and there was a discussion in the grand jury room with reference to the best means of controlling bawdy houses over the State, different theories being advanced and discussed by the county attorney and others, among them Mr. Jackson, and that he thought Mr. Jackson was asked by one of the jurors for his opinion as to the propriety of indicting the women, and they talked about it in a general way. The chief of police said after he had been given a list of names of persons keeping bawdy houses that there were discussions in his presence in the grand jury room as to the propriety of returning bills of indictment or make efforts to restrain by injunction or some other means. At the time he was a witness, and the county attorney was present and entered into the discussion as to the best means to deal with bawdy houses.

"The deliberations of the grand jury shall be kept secret." C. C. P., art. 425. "The grand jurors take an oath to keep them secret." C. C. P., art. 416. "They may take advice from the State's attorney and he may examine the witnesses before them," C. C. P., arts. 427-428, and "The attorney representing the State may go before the grand jury at any time, except when they are discussing the propriety of finding a bill of indictment, or voting on the same." C. C. P., art. 426.

The statute, article 570, Code of Criminal Procedure, says: "A motion to set aside an indictment shall be based on one or more of the following causes and no other": 2. "That some person not authorized by law was present when the grand jury was *deliberating* upon the accusation against the defendant, or were voting upon the same."

Construing these provisions of the statute, it has been held that among the persons authorized by law to be present with the grand jury, were the State's attorney, his assistant and stenographer, witnesses and members of the grand jury disqualified in the particular inquiry under investigation. Stuart v. State, 35 Texas Crim. Rep., 440; Sims v. State, 45 S. W. Rep., 705; Wilson v. State, 41 Texas Crim. Rep., 115; McElroy v. State, 49 Texas Crim. Rep., 604; Moody v. State, 57 Texas Crim. Rep., 76; Haywood v. State, 61 Texas Crim. Rep., 92; Porter v. State, 72 Texas Crim. Rep., 71. None of these persons are authorized to be present while the grand jury is deliberating upon the accusation, or voting on it. This is held in all the cases mentioned.

In Stewart's case, supra, the county attorney was present "during their deliberations, but not when voting." In each of the other cases the unauthorized person was not present during the deliberations, or when the voting took place. The indictment involved in the Stewart case was set aside; that in the others was sustained.

In this case some of the persons present were witnesses, some the prosecuting attorneys, and some persons who seem from the record before us to have been neither witnesses nor State's attorneys. The question is, however, whether they were present when the grand jury was "deliberating upon the accusation" against the appellant. This court in Stewart's case approves the definition of the term "deliberating" given by Mr. Webster as follows: "The act of weighing and examining the reasons for and against a choice of measures; careful discussion of the reasons for and against a proposition." In Sims' case, supra, this court says: "We have heretofore held that whenever the record discloses the fact that some person not authorized by law was present when the grand jury was deliberating upon the accusation against the defendant, or voting on the same, the statute was mandatory and the indictment should be quashed." In Haywood's case, supra, the court deciding whether the presence of the county attorney and his assistants was unauthorized under the facts found, referring to the Sims case, says: "the meaning of the two articles (426 and 570, supra) is clear: that the county attorney may be present at all times *except when* the grand jury is deliberating upon whether or not they will return a bill of indictment, or voting on the same."

The test in the statute, and in all the cases construing it, is, were the persons present when the grand jury was deliberating on the question of finding the indictment? Other definitions of the word "deliberating" are found in Century Dictionary: "Weighing facts and arguments

with the view of choice of decision." "The act of weighing and examining conflicting reasons; mutual discussion and examination for and against a measure." The definition in 13 Cyc., 771, is the same as Webster's, supra.

The evidence summarized above, we think, indicates that in the presence of the persons who were not members of the grand jury, and who were present with it, there were deliberations, within the meaning of the statute, of the grand jury as to whether an indictment against the appellant would be returned or not. Some of the witnesses say that the grand jury was in possession of evidence upon which the indictment was found, and indicate that they were undecided and entertained a difference of opinion as to whether the indictment should be found or not; that they had under consideration the accusation against the appellant and others accused with the same offense. In the language of Mr. Webster, approved by this court, they were engaged in "the act of weighing and examining the reasons for and against a choice of measures"; were engaged in a "careful discussion and reasons for and against a proposition," viz: the indictment of the accused and others. Nothing else was before them at the time so far as the evidence shows, and the whole proceeding seems to have been an effort to decide whether to find a bill of indictment or not. We can not escape the conclusion that it was contrary to the provisions of the statutes quoted above, which have been held mandatory, and that a reversal of the judgment of the lower court for failure to sustain the motion must follow.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*