## HOWARD BOARD, ALIAS HOME BOY BOARD, V. THE STATE.

No. 15430.   Delivered January 18, 1933.
Reported in 56 S. W. (2d) 464.

The opinion states the case.

*Tom McMurray* and *Arthur Lee Moore,* both of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense; murder, the punishment, two years in the penitentiary.

The killing took place on a certain Sunday night at or near a negro church.   A short time before the killing actually occurred, a difficulty had arisen between the appellant and a negro girl by the name of Cora Towles, who was a niece of the deceased, and because of said difficulty the said Cora Towles struck the defendant with a knife, inflicting some injuries to his hand and wrist.   There was some evidence to show that in this difficulty between the appellant and Cora Towles the deceased and another negro man by the name of Dewberry participated.   The appellant, shortly after the trouble between himself and the said Cora Towles, left the premises where the difficulty had taken place, went to his home, procured a shot

gun, and returned to near the negro church and there shot and killed the deceased.

The appellant offered testimony to show that the deceased had threatened the appellant on the occasion in question. Appellant also introduced one witness who testified to a threat that had been made by deceased against appellant some two or three weeks prior to the killing. The appellant testified that he returned with the gun for the purpose of conversing with the people with whom he had the difficulty in order to settle their differences, and he brought the shot gun back with him for the purpose of protecting himself if necessary. He further testified that at the time he fired the shot which took the life of the deceased, deceased had a rock in his hand with his hand drawn back in a threatening position and he shot the deceased because he thought deceased was about to strike him or throw said rock at him.

One of the appellant's main contentions is based on the refusal of the learned trial judge to compel the state's attorney to deliver to his attorney certain written statements. This matter is presented by a bill of exception. The bill shows that in justification of said killing the defendant relied upon the fact that he acted in self-defense; that the deceased had threatened his life and said threats had been communicated to appellant and he believed said threats; that some ten or fifteen minutes before the killing, one Cora Towles had cut and slashed him with a knife about his hands and wrist; that the deceased, who was the uncle of Cora Towles, accompanied by one T. Y. Dewberry, had attacked the defendant and had tried to kill or inflict serious bodily harm to the defendant; that at the time of the actual killing deceased had a large rock in his hand and was threatening to strike defendant with same. The bill further shows that the defendant introduced as a witness one Herman Rusk, who testified on direct examination that he was at the scene of the homicide a short time before the actual killing and he saw Cora Towles, who was a niece of the deceased, cut the defendant twice with a knife and saw the said Cora Towles and deceased and one Dewberry run the defendant in between two automobiles and saw the deceased and the other man with rocks in their hands while they were running the defendant and while they were going up to where defendant was and that the deceased indicated that he was taking something out of his pocket; that it was necessary for the defendant to jump over the hood of an automobile in order to get out from the car and the deceased and the other man. The bill further shows that

after the witness had so testified, the state's attorney exhibited to said witness, while he was on the stand and in the presence and hearing of the jury, a paper containing about two pages of typewritten matter and asked the witness if the same was not a statement that he (the witness) had given to Mr. Dawson Davis, another assistant district attorney, just a few days after the homicide, to which the witness answered in the affirmative and identified his signature; thereupon, the state's counsel proceeded to read portions of the statement and asked the witness if he had not made such statements, all of which was in the presence and hearing of the jury. The bill further shows that on cross-examination of the witness, state's attorney asked the witness if, as a matter of fact, he had not heard any one holler to the defendant, "Run, boy, run, or they will kill you," to which the witness answered that he had heard such statement made. Then the witness was asked if it was not a fact that he never had heard any words spoken such as "They will kill you," and the witness answered that he had heard such statement made. Then the witness was asked if as a matter of fact he had not made up that portion of his testimony since he signed the statement, which he denied. The bill further shows that the state's attorney, after the above proceedings, had failed and refused to introduce any portion of said statement to the jury, except the portion state's counsel read in the presence and hearing of the jury and questioned the defendant with reference thereto. The bill further shows that when the state turned said witness over to the defense counsel for redirect examination, counsel for defendant requested the court to require the state's attorney to deliver the statement signed by the said witness, which said statement at the time was in the hands of the assistant district attorney participating in the trial of the case, while he was sitting in the court room, in the presence and hearing of the jury, to defense counsel in order that defense counsel might have the benefit of all of said statement, which motion was denied and refused by the court, whereupon defense counsel stated that he desired to introduce said statement to the jury in toto, and stated, "I do here now offer said statement in full in evidence"; but the court refused to require state's counsel to deliver said statement to defense counsel and defense counsel was therefore unable to introduce said statement before the jury, although he had offered the same. The bill further shows that at the time the defense counsel stated that he offered the same for the reason that in allowing state's counsel to read therefrom with reference to portions of said

statement the jury would be led to believe that said witness had made a different statement a few days after the homicide than the statement that he was making in open court while testifying and would lead the jury to believe that the statement inquired about was different from his present testimony; that the action was extremely prejudicial to the rights of the defendant in that as a matter of fact the statement in question contained in substance the same testimony as was testified to by the witness on the stand in the trial of this case; and that in not allowing defense counsel to read all of same to the jury, said witness was thrown in an improper light and his testimony greatly weakened, and to all of which appellant's counsel duly excepted. The bill is allowed with the explanation that the portion of the statement set out in the bill was read by counsel for the state to the witness in portions and the witness was interrogated with reference to whether or not he made such statements and whether or not they were true.

That portion of the written statement about which the witness was interrogated differed materially from some of the statements shown to have been testified to by said witness. In his direct evidence, said witness testified positively that he saw the said Cora Towles and the deceased and another man by the name of Dewberry run the defendant in between two automobiles and saw the deceased and Dewberry with rocks in their hands while they were running the appellant; but it is shown from the testimony read to the witness about which he was interrogated that he did not know who the negro woman was who cut the appellant and that he did not know either one of the men he had seen following the woman. Therefore, said testimony could only be offered for the purpose of impeaching said witness and this was the only purpose for which said testimony could have been admissible. As to the contents of said written statement signed by the witness, it is not before this court, and there is nothing in the record which showed that appellant's counsel has ever been allowed to see said written statement. What the contents of said statement are, whether it relates to the same subject matter testified to by the state's witness and whether that portion of it not read explains or tends to explain the testimony and the statements about which the witness was examined on cross-examination, we cannot say. The writing called for by appellant was not a public document and not open to inspection of appellant's counsel as a matter of right. Goode v. State, 57 Texas Crim. Rep., 220, 123 S. W., 597; Taylor v. State, 87 Texas Crim. Rep., 338, 221 S. W., 611. But such

paper becomes subject to appellant's demand for its production only when used before the jury by the state in some way by which its contents become an issue. Green v. State, 53 Texas Crim. Rep., 490, 110 S. W., 920, 22 L. R. A. (N. S.) 706; Rutledge v. State, 94 Texas Crim. Rep., 231, 250 S. W., 698.

Applying the rules laid down in the authorities cited, the bill of exception in question shows that the state had asked questions relevant to the written statement and had exhibited same by reading therefrom in the presence of the jury. This was equivalent to an introduction of that part of said statement which the state's counsel had read before the jury, and under the circumstances we believe that the appellant had a right to examine said written statement and introduce all of said statement that tended to explain or clarify the portions read to the witness in the presence of the jury in evidence by the state. Certainly a question of fairness would require it to be made available to counsel for appellant.

The issue in this case was sharply contested and the contents of said statement so far as we know might have been very material to appellant's theory of self-defense, and we feel constrained to hold that the failure of the trial court to permit appellant's counsel to examine said statement was such error as calls for reversal of this case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.