JESUS LOPEZ V. STATE.

No. 25,804. April 16, 1952.
Rehearing Denied June 4, 1952.
Writ of Certiorari Denied, November 24, 1952, by
Supreme Court of the United States.

*Ligarde and Flores,* and *Mann and Byfield, Laredo,* for appellant.

*E. James Kazen,* District Attorney, Laredo, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is seduction; the punishment, two years.

Prosecutrix testified that she had known appellant since childhood; that for some time they had both been employed at the same ranch; that, in September, 1949, appellant had proposed marriage to her and that she accepted him; that, in October of that year, he asked her to engage in an act of sexual intercourse with him; that, at first, she refused, but, upon a repetition of his promise to marry and setting of a date thereof, she had consented to the act of intercourse. She testified that, as the date set approached, appellant put her off with various pretenses, and that they were never married; but, while the

date for the marriage was being postponed, appellant slept with her and had intercourse with her regularly.

Prosecutrix was supported in her testimony concerning their serious intention to marry by the testimony of their acquaintances relating to their joint request to act as "sponsors" at the ceremony (a Latin-American custom), by proof of the purchase of a stove to be used in their household, by love letters from the appellant, and by appellant's confession, which was introduced in evidence.

Appellant, testifying in his own behalf, admitted the many acts of intercourse with prosecutrix and the promise of marriage, but claimed the acts antedated the promise and claimed that he was nervous when he made the confession and did not notice the dates set forth therein.

One Paula Lopez, a cousin of the appellant, testified that she shared the ranch house with prosecutrix for approximately a year after the date alleged in the indictment, that prosecutrix and appellant slept together, and that prosecutrix never told her that she and appellant were to be married.

Appellant's sister testified that, after the day charged in the indictment, she had seen prosecutrix kiss another boy.

There was testimony from several witnesses that, while in California with her employer, before the date charged in the indictment, prosecutrix had gone to see a doctor about a delay in her menstrual period. No witness testified, however, that prosecutrix had admitted having had an act of intercourse prior to the visit to the doctor or prior to the date charged in the indictment.

The day charged in the indictment was October 15, 1949. The confession of appellant was shown to have been voluntarily made. We quote therefrom as follows:

"I had sexual intercourse with (naming the prosecutrix) for the first time in about October of 1949, at Mr. Dick's ranch. I promised to marry (again naming her) but we never did marry because I would tell her to wait for me. I set the wedding date in November of 1950, but I did not marry her on that date and I told her to wait."

We find the evidence sufficient to support the conviction.

Appellant filed a motion to set aside the indictment, alleging:

1. That unauthorized persons were present with the grand jury during their deliberations before returning an indictment in this cause, as denounced by Article 506, C. C. P., and

2. That outside influence was brought to bear upon the grand jury which caused them to indict appellant.

A hearing was had on said motion. We think that an accurate summary of the 135 pages of testimony taken at such hearing reveals the following:

1. That the appellant appeared as a witness before the grand jury; and, at the conclusion of his testimony, his mother was brought into the grand jury room, at which time there was a discussion as to whether appellant would marry the prosecutrix.

In order to pass upon the propriety of this procedure, we must remember that this was a seduction case, and marriage of the parties would have terminated the prosecution. Article 506, P. C.

It is apparent that appellant's theory, throughout the hearing, was that, when the appellant told the grand jury that he refused to marry the prosecutrix, each member of the grand jury made up his own mind to vote for the return of an indictment, and that this constituted deliberation while an unauthorized person was present, within the meaning of the statute. Some of the evidence adduced might be construed to support appellant's contention; but it goes further and shows that later in the day, while no unauthorized person was present, the grand jury deliberated upon the accusation against the appellant and voted to return an indictment charging him with seduction. In the case of Johnson v. State, 131 Tex. Cr. R. 23, 95 S. W. (2) 697, we held as follows:

"The term 'deliberating upon the accusations against the defendant,' within the statute provided that an indictment may be set aside when a person not authorized by law was present when the grand jury were also deliberating upon the accusations against the defendant, held to mean the act of discussing reasons for and against the finding of a bill of indictment and not the mere examination of witnesses giving testimony."

We cannot bring ourselves to hold that the moment of decision on the part of each grand juror would be a feasible test.

Clearly, the statute contemplated their combined decision. The facts of this case do not bring it within the rule denouncing discussions as to the propriety of finding an indictment in the presence of outsiders laid down in McGregor v. State, 83 Tex. Cr. R. 35, 201 S. W. 184.

Each member of the grand jury testified that, later in the day, after appellant and his mother had left, they discussed the case against appellant and voted to return the indictment. This disposes of appellant's first contention.

2. The second ground of attack is not one contemplated by Article 506, C. C. P., which reads as follows:

"A motion to set aside an indictment or information shall be based on one or more of the following causes, and no other:

"1. That it appears by the records of the court that the indictment was not found by at least nine grand jurors, or that the information was not based upon a valid complaint.

"2. That some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same."

Appellant had alleged and testified that Judge Raymond had been instrumental in having him indicted and claims that such fact operated to deprive him of due process guaranteed to him by the State and Federal Constitutions.

Without passing upon whether an indictment could be vitiated by such proof, we observe that, in order to raise such a question, it was incumbent upon appellant to prove that some improper influence found its way into the grand jury room and there had its effect. This, he failed to establish in any detail through the testimony of any member of the grand jury, and all were examined on the question. The question of fact raised by the testimony of appellant and his mother was resolved against appellant by the trial court who heard the testimony.

Appellant complains because the trial court refused to place the grand jurors under the rule at this hearing, which was held, of course, prior to the main trial and before the court. We find no abuse of the trial court's discretion in this respect, there being no statutory requirement applicable to such proceedings.

A second motion to set aside the indictment alleged that the grand jury proceedings were conducted in Spanish. The only proceeding shown to have been so conducted was the conversation with appellant and with his mother while they were in the grand jury room. The record reveals that appellant testified on the trial in the Spanish language through the interpreter, and his confession was made in Spanish. It further shows that each member of the grand jury understood the Spanish language.

A grand jury proceeding is not one in which the accused has the right to be confronted with the witnesses against him and does not come within the rule announced in Garcia v. State, 151 Tex. Cr. Rep. 593, 210 S. W. (2d) 574, requiring the trial to be conducted in the English language. We perceive no possible injury to appellant.

Appellant moved to change the venue from Webb County, alleging that there existed therein a combination of influencing persons against him. A hearing was had on said motion, and appellant failed completely to support his allegations.

It will be further noted that it was incumbent upon appellant to show, in such cases, that the prejudice or influence against him actually found its way into the jury box. Jones v. State, 156 Tex. Cr. R. 248, 240 S. W. (2d) 771; Jones v. State, 156 Tex. Cr. R. 475, 243 S. W. (2d) 848; and Golemon v. State, No. 25,504, 157 Tex. Cr. Rep. 534, 247 S. W. (2d) 119. This, he failed to do.

Appellant's formal Bill of Exception No. 6 complains of the exclusion of the testimony of two different witnesses, is therefore multifarious, and presents nothing for review.

Appellant's formal Bill of Exception No. 7 reflects that the prosecutrix testified on direct examination in Spanish, which testimony was translated by the court interpreter into English; that, on cross-examination, she began answering in Spanish, but soon thereafter changed to English. During the time she was making her answers in English, she admitted having an act of intercourse with appellant prior to the date charged in the indictment; then, after further interrogation on other matters, the court declared a recess, and, during such recess, prosecutrix talked to the district attorney. At the termination of the recess, the court asked the prosecutrix, through the interpreter, if she had understood the questions during the time she had

been examined in English, and she answered, "Some and some I have not." It is further shown that, on re-direct, she testified that she had not understood the question and denied that she had intended to answer, as shown above.

This bill complains that the court erred in not granting a new trial for the reason that "the question asked said witness by the Trial Court, at the time it was asked, * * * constituted such a comment on the weight of the evidence, and was so prejudicial to the defendant, that same could not be cured by the instruction given by the court." The bill shows that no objection was made, and no exception reserved, at the time and that a requested charge to disregard the same was given by the court in his written charge to the jury.

We see nothing in the question by the court that would convey to the jury his impressions from the evidence.

Under the facts, reversible error is not shown.

Bill of exception No. 9 complains of the court's refusal to grant appellant's motion to require the district attorney to allow him to inspect and copy the confession, and other evidence in the hands of the district attorney, prior to commencement of the trial.

It has been the consistent holding of this court, through the years, that such evidence, prior to its introduction in evidence, is not a public document and not subject to inspection of appellant prior to the moment it is offered. Board v. State, 122 Tex. Cr. R. 487, 56 S. W. (2d) 464, and Taylor v. State, 87 Tex. Cr. R. 330, 221 S. W. 611.

Bill of Exception No. 11 complains of the admission of the confession in evidence because the warning was in English and the body of the confession was in Spanish. It will be noted that the warning was translated to the appellant by both the foreman of the grand jury and by the district attorney before the confession was made, and the portion in Spanish was translated by the interpreter and given to the jury in English. It would appear to us that this represents a practice more favorable to appellant than that approved by this court in Ortega v. State, 123 Tex. Cr. R. 322, 58 S. W. (2d) 825, and Gonzales v. State, 147 Tex. Cr. R. 401, 187 S. W. (2d) 910. There, the translations were made at the time of the taking of the confession. Under the procedure

employed here, appellant was allowed to make his confession in his native tongue and then, at the trial, as was done in this case, be certain that the translation as to shades of meaning of certain words met his approval before it reached the ears of the jury.

There appears to be a great duplication between appellant's formal and informal bills of exception; however, we have examined all of them and the entire record of more than 560 pages, together with appellant's brief of 125 pages, and have written on the questions raised by appellant in argument.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant has filed a lengthy motion, approximately fifty pages, asking for a rehearing herein and he seems to be dissatisfied with our disposition of every proposition offered as set forth in the original opinion.

We have again carefully read the statement of facts and the motion for rehearing herein and have again convinced ourselves of the correctness of our holding in the original opinion.

The testimony clearly shows that appellant had debauched the complaining witness. It also shows that he had often promised her marriage. It seems the only difference between his testimony and that of the prosecutrix is as to when the promise was made. The jury, after proper instruction, found the promise to have been made at a time prior to the seduction, otherwise they would not have convicted him; the court having instructed them on this matter carefully. This involved and difficult case was tried by a learned and prudent judge and we think correctly so.

We adhere to our opinion disposing of all problems presented and the motion for rehearing will be overruled.