ROBERT E. FREEMAN V. STATE.

No. 29,836. June 25, 1958.
Appellant's Motion for Rehearing Overruled
November 12, 1958.

*Woody & Showers,* by *Clyde W. Woody,* Houston, for appellant.

*Dan Walton,* District Attorney, *Thomas D. White* and *Frank Briscoe,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The offense is murder; the punishment, death.

The state's testimony shows that the appellant killed the deceased, Sandra Jean Maywald, his seventeen-year-old girl friend by cutting her with a knife. The homicide occurred at the deceased's home when no one else was present. When the officers arrived at the scene they were met at the front door by the appellant who, with blood splattered on his shirt, glasses, and face, said "I am afraid I have just killed a person;" "You will probably want the knife that I killed her with too" and handed the officers a bloody bone handled one bladed knife. Appellant then directed the officers to a bedroom where the nude body of th deceased was found under a bed spread on a bed covered with blood, with the neck cut in two places. An autopsy performed upon the body showed that the jugular vein and carotid arteries were severed, the trachea cut, and that the cause of death of the deceased was hemorrhage from the severance of the jugular vein and carotid arteries.

The state offered in evidence appellant's written confession, except certain portions, made to the officers following his arrest in which he admitted killing the deceased and described in detail the circumstances surrounding the killing. In his confession appellant stated that on the day of the homicide the deceased called him and told him that she did not want to go with him anymore and that the reason he went to her home was "I thought that maybe I could straighten things out with her." In describing the details of the killing appellant stated that after they talked and the deceased had refused to continue to go with him he grabbed her around the neck and started choking and squeezing her; that when she fell back on the bed he wrapped a nylon stocking around her neck and pulled it with his hands; that he got his knife out of his pocket and remembered swinging it at her and that he realized that he was killing her. He further detailed how he then shut the front door,

checked the back door to see if it was locked, called the police and told whoever had answered that he had killed someone, then went to where the deceased was lying and cut a bathing suit she was wearing off her body, covered her body up with the bed spread, and then tried to call her mother.

Appellant's sole defense was that of insanity and in support thereof appellant called Dr. R. M. Finney, a psychiatrist, who testified that he had examined the appellant and from the examination found the appellant was suffering from a mental disease known as schizophrenia of the paranoid type. Dr. Finney expressed his opinion that appellant was insane both at the time of the commission of the offense and at the time of trial. Dr. Howard G. Crow, a psychiatrist, who had also examined the appellant testified that appellant was suffering from schizophrenia and expressed his opinion that appellant was insane at the time of the commission of the offense as well as at the time of the trial. Appellant also called as witnesses a clinical psychologist, a psychiatric social worker, his parents and certain lay witnesses who testified in support of his defense of insanity.

The state called Dr. C. A. Dwyer, Harris County Psychiatrist, who testified that he had examined the appellant and that in his opinion the appellant, on the day of the homicide, had the mental capacity to know the nature and consequences of his act and that it was wrong. The state called certain lay witnesses whose testimony supported its contention that the appellant was sane. The state also introduced in evidence a judgment entered in a sanity hearing held less than a week before the trial in which the jury found the appellant to have been sane at the time of the commission of the offense and at the time of the hearing.

The jury chose to accept the state's evidence and reject that of the appellant and we find the evidence sufficient to support its verdict.

Appellant filed, prior to the sanity hearing and main trial, a motion to require the district attorney to produce for appellant's inspection his confession and reports of certain named doctors alleged to be employed by the city of Houston and Harris County which appellant alleged were in possession of the district attorney and contained evidence material to his defense. He also sought in the motion an order of the court authorizing his inspection of the records of Faith Home, an agency of Har-

ris County through which he was adopted into his foster home. The motion was denied by the court; no exception was reserved by appellant to the court's action and no statement of facts of any evidence adduced upon hearing of the motion appears in the record.

Recently in Dowling v. State, opinion delivered March 19, 1958, 167 Texas Cr. Rep. ___, 317 S.W. 2d 533, we adhered to the rule that an accused is not entitled to a pre-trial inspection of his confession. In Pettigrew v. State, 163 Texas Cr. Rep. 194, 289 S.W. 2d 935, we said "We know of no rule of law that would require the state to furnish the accused, before the trial, with copies of pictures it intends to introduce against him." It has been the consistant holding of this court that state's counsel is not required to furnish the accused with statement of witnesses, exhibits or confessions for the purpose of pre-trial inspection. Taylor v. State, 87 Texas Cr. Rep. 330, 221 S.W. 611; Board v. State, 122 Texas Cr. Rep. 487, 56 S.W. 2d 464; Smith v. State, 156 Texas Cr. Rep. 253, 240 S.W. 2d 783 and Lopez v. State, 158 Texas Cr. Rep. 16, 252 S.W. 2d 701. As to the appellant's request for inspection of the records of Faith Home, there is nothing in the record to show that the agency had refused to permit appellant or his attorney to examine its records. Under the provisions of Art. 46a, sec. 10, V.A.R.C.S., the official records of appellant's adoption were available for his inspection without the necessity of a court order.

We find no error in the court's action denying the motion.

Appellant objected to the judgment entered in the sanity hearing before the main charge when offered in evidence by the state on the ground that the court had lost jurisdiction because of the action of the district attorney in suppressing certain evidence in the proceeding. Upon the court's overruling the objection appellant requested permission to then and there call witnesses for the purpose of showing his claim of suppression and to perfect his bill of exception. In refusing such request the court advised appellant's counsel that he would be allowed to introduce the testimony to perfect his bill of exception before the end of the trial. The record does not reflect that appellant threafter tendered the witnesses for the purpose of perfecting his bill of exception. Under the record it appears that appellant was afforded full opportunity to perfect his bill of exception and was not denied such right; hence, no error is shown. Weeks v. State, 161 Texas Cr. Rep. 202, 275 S.W. 2d 684 and Davidson v. State, 162 Texas Cr. Rep. 640, 288 S.W. 2d 93.

Appellant complains of the action of the court in permitting Dr. C. A. Dwyer, the state's expert witness, to testify relative to his experience in observing and treating other prisoners of war in Billibid Hospital for Military Personnel in the Philippine Islands while he was a prisoner of war, over the objection that such testimony was highly prejudicial and an attempt to engender sympathy for the witness. In Morrow v. State, 154 Texas Cr. Rep. 21, 224 S.W. 2d 481, we held similar testimony of this same witness admissible in determining his qualifications as an expert on insanity.

Appellant further complains of the action of the court in permitting the state on rebuttal to call the witness, Patrick H. O'Bryan, a newspaper reporter, for the purpose of impeaching certain testimony of Dr. Lawrence E. Freeman, the appellant's foster father, over the objection that it constituted impeachment on a collateral and immaterial issue and a proper predicate had not been laid. The record reflects that Dr. Freeman, while testifying as a witness in behalf of appellant, outlined in detail the appellant's life from infancy to the date of commission of the offense, testified in effect that appellant had led a disturbed and abnormal life and expressed his opinion that appellant was insane. On cross-examination Dr. Freeman denied that he had stated to a newspaper reporter, on the day following the homicide, that appellant had always been "just a happy normal youngster" and that "I can think of nothing about his boyhood that would have anything to do with this." After such denial the newspaper reporter, O'Bryan, was called by the state on rebuttal and testified that on such occasion Dr. Freeman did make the statements to him. Under the record it appears that a proper predicate had been laid for the impeachment of Dr. Freeman's testimony and that it was upon a material issue; hence, no error is shown.

In submitting appellant's defense of insanity to the jury in his charge the court instructed that in order to establish a defense on the ground of insanity it must be proved "* * * that at the time of committing the act the party accused was laboring under such defect of reason, from disease of mind, as not to know the nature and quality and consequence of the act he was doing; or if he did know, that he did not know he was doing wrong, that is, that he did not know the difference between the right and the wrong as to the particular act charged against him" and that "* * * the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the

nature and quality and consequences of the particular act done and of the right and wrong of the particular act done."

A similar charge was approved in Simpson v. State, 163 Texas Cr. Rep. 385, 291 S.W. 2d 341, as correctly submitting the defensive issue from the standpoint of the ability of the accused to know the nature and consequences of his acts and the difference between right and wrong, which is the test of insanity in this state. See also, 1 Branch's Ann. P.C. sec. 59.5, page 50, and cases there cited where a similar charge is set out as being correct. The charge was sufficient and the court did not err in refusing to include within the submission of the defense an issue as to whether appellant was affected with schizophrenia. Parsons v. State, 160 Texas Cr. Rep. 387, 271 S.W. 2d 643; nor did the court err in refusing to instruct on irresistible impulse as such doctrine is not recognized in this state. Simpson v. State, supra.

The jury returned into court the following verdict signed by its foreman: "We the jury find the defendant guilty of murder with malice aforethought and assess his punishment at death." By motion in arrest of judgment and for new trial appellant questioned the sufficiency of the verdict on the ground that it was not responsive to the court's instructions and did not determine the issue of sanity at the time of the commission of the offense or at the time of the trial. Under the court's charge, which was drawn under the provisions of Art. 932a, V.A.C.C.P., prior to its repeal by the enactment of Art. 932b, V.A.C.C.P., Acts. 1957, 55th Legislature Ch. 486, page 1413, effective January 1, 1958, the jury was instructed that if they believed beyond a reasonable doubt that appellant killed the deceased as charged but further believed that he was insane at the very time he committed the act then it would find him not guilty on the grounds of insanity and let its verdict so state. The court further instructed the jury that in the event it found appellant insane either at the time of the commission of the act charged or at the time of the trial then it should let its verdict reflect its findings on the forms furnished them. The jury were further instructed that if it did not believe the appellant was insane at the time of the trial then it would find that he was sane.

The jury's verdict under the court's charge finding appellant guilty clearly evidenced the jury's intention to find appellant sane both at the time of the commission of the offense and at the time of trial. In Chapman v. State, 136 Texas Cr. Rep.

285, 124 S.W. 2d 112, where the jury returned a verdict of guilty under similary instructions without a specific finding on the issue of sanity we said:

"We think that a failure or refusal of the jury to make a specific finding thereon under the charge of the court is tantamount to a finding that he was sane at the time of the trial."

We find the jury's verdict under the court's instructions sufficient and overrule the appellant's contention.

In oral argument before this court appellant complains of certain jury argument of state's counsel. There are no formal bills of exception complaining of jury argument. The entire argument of state's counsel is before us in a separate statement of facts and an examination of the same does not show that appellant attempted to reserve therein by informal bill of exception any objections to the argument. We have, however, in view of the penalty assessed, considered the entire argument of state's counsel and find that it is legitimate argument under the evidence.

We have carefully considered all other questions presented by the record and perceive no error. The record reflects the brutal killing of a young defenseless girl by the appellant without any legal justification or excuse. Appellant has been tried before a fair and impartial judge and jury and the facts warrant the action of the jury in finding him guilty and assessing the supreme penalty.

The judgment of the trial court is affirmed.

Opinion approved by the court.

ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

Appellant again urges each of the contentions advanced on original submission and discussed in our prior opinion. We are at a loss to know what we might add hereto that would be of benefit to the jurisprudence of this state unless we make it fully clear that this trial took place prior to the effective date of our present insanity statute, Article 932b, V.A.C.C.P., and for that reason there was at that time no statutory requirement that the jury in its verdict should make a finding as to the sanity of

the accused. Such has not been the case since January 1, 1958, and this case will not be considered as authority for any case tried since such date.

Appellant's motion for rehearing is overruled.