In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00029-CR

                                                ______________________________

 

 

                              ELIJAH LORENZO COLBERT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0820618

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Elijah
Lorenzo Colbert appeals.[1]  In this case, Colbert was convicted of
engaging in organized criminal activity and sentenced to life in prison as a
result of his participation with others in breaking into a pawnshop and
stealing pistols.  As with the companion
prosecution, after investigation that centered police attention on certain
individuals and resulted in the recovery of many of the stolen items, a
participant admitted involvement and identified Colbert as one of the other
robbers.  At trial, several other
witnesses provided testimony that corroborated the co-defendant’s statements.

            Because
the issues raised in each appeal are identical, for the reasons stated in our
opinion dated this day in Colbert v. State, cause number 06-10-00028-CR,
we affirm the judgment of the trial court.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April
14, 2011

Date Decided:             April
15, 2011

 

Do Not Publish











[1]In
a companion appeal, also decided this day, Colbert was convicted of burglary of
a building and sentenced to twenty years’ imprisonment.  He was tried in both cases in a single
proceeding.








App.
1971). The detective who did testify remained in the room "to coordinate the testimony of the
witnesses." Id. Again, the court pointed out that the detectives were not present during grand jury
deliberations and concluded there was no error:

 The Texas rule is that "when the jurors are not deliberating or voting the presence of
persons who have official business in the jury chamber, such as police officers or
stenographers, is not discountenanced." 27 Tex. Jur.2d 261, Sec. 44. See: Lopez v.
State, 158 Tex. Crim. 16, 252 S.W.2d 701; Tinker v. State, 95 Tex. Crim. 143, 253
S.W. 531.


 However, better practice would dictate that only the prosecutor, reporter, if any, and
such witnesses that are testifying be present.

Id. (emphasis added). (8) "Discountenance" is "to treat or regard with disfavor." Webster's II New
College Dictionary (2d ed. 2001).

 (b) Codification of the "Better Practice" Rule

 If the presence of unauthorized people during grand jury testimony was not disfavored, it
became at least somewhat more disfavored in 1995 when the Legislature passed Article 20.011,
effectively codifying what had historically been deemed "the better practice." Again, no cases
construe or apply Article 20.011. We must apply the plain language of Articles 20.011 and 27.03
to determine whether there is no error when unauthorized people are in the grand jury room during
testimony.


 (c) Construction of Articles 20.011 and 27.03

 Article 20.011 of the Texas Code of Criminal Procedure became effective September 1,
1995, and limits who may be present during both grand jury proceedings and grand jury
deliberations:

 (a) Only the following persons may be present in a grand jury room while the grand
jury is conducting proceedings:


 (1) grand jurors;

 (2) bailiffs;

 (3) the attorney representing the state;

 (4) witnesses while being examined or when necessary to assist the attorney
representing the state in examining other witnesses or presenting evidence to
the grand jury;

 (5) interpreters, if necessary; and

 (6) a stenographer or person operating an electronic recording device, as
provided by Article 20.012.

 

 (b) Only a grand juror may be in a grand jury room while the grand jury is
deliberating.


Tex. Code Crim. Proc. Ann. art. 20.011 (Vernon 2006). Notably absent in Article 20.011 is a
specific remedy for a violation of the rule. It is also quite significant that Article 20.011 addresses
the presence of unauthorized persons both in grand jury proceedings and in grand jury deliberations.

 Article 27.03 specifically provides circumstances in which an indictment may be set aside:

 In addition to any other grounds authorized by law, a motion to set aside an
indictment or information may be based on the following:


 1. That it appears by the records of the court that the indictment was not found by
at least nine grand jurors, or that the information was not based upon a valid
complaint;


 2. That some person not authorized by law was present when the grand jury was
deliberating upon the accusation against the defendant, or was voting upon the
same; and


 3. That the grand jury was illegally impaneled; provided, however, in order to raise
such question on motion to set aside the indictment, the defendant must show that he
did not have an opportunity to challenge the array at the time the grand jury was
impaneled.


Tex. Code Crim. Proc. Ann. art. 27.03 (Vernon 2006) (emphasis added). We note that Article
27.03 refers to the presence of unauthorized persons during grand jury deliberations only. So, the
presence of unauthorized persons during grand jury testimony can be a basis for setting aside the
indictment only if Article 20.011 serves as authority to do so. That is, only if Article 20.011's list
of authorized persons would qualify as "other grounds authorized by law" under Article 27.03, may
Walter seek to set aside the indictment on the basis that unauthorized persons were present during
testimony before the grand jury. We conclude that Article 20.011 does not authorize an indictment
to be set aside on the ground that unauthorized persons were present during grand jury testimony.

 (d) Article 20.011 Does Not Authorize Setting Aside the Indictment Based on Presence
of Unauthorized Persons During Grand Jury Testimony


 It is a well-settled rule of statutory construction not to interpret laws in such a way as to
render useless an act of the Legislature. We, therefore, presume that, in enacting legislation, the
Legislature did not do a "useless thing." See Childress v. State, 784 S.W.2d 361, 364 (Tex. Crim.
App. 1990); Heckert v. State, 612 S.W.2d 549, 552 (Tex. Crim. App. 1981); see also Tex. Gov't
Code Ann. § 311.021(2) (Vernon 2005) (providing "it is presumed that the entire statute is intended
to be effective"). Generally, courts are also to presume that every word in a statute has been used
for a purpose and each word, phrase, clause, and sentence should be given effect if reasonably
possible. State v. Hardy, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997); State v. Verhoeven, 151
S.W.3d 637, 640 (Tex. App.-- Fort Worth 2004, pet. ref'd). To achieve this, we must focus "on the
literal text of the statute in question and attempt to discern the fair, objective meaning of that text
at the time of its enactment." See Ex parte Spann, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004);
Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). In doing so, we may consider, among
other things, "common law or former statutory provisions, including laws on the same or similar
subjects." See Tex. Gov't Code Ann. § 311.023(4) (Vernon 2005).

 We apply these rules of statutory construction to determine whether Article 20.011 calls for
an indictment to be set aside when the record shows that unauthorized persons were present during
the grand jury testimony. To determine this issue, we return to our earlier observation regarding
Article 20.011: while Article 20.011 forbids unauthorized persons to be present with a grand jury
during both testimony and deliberations, it does not specify a remedy for either situation. See Tex.
Code Crim. Proc. Ann. art. 20.011.

 That said, we also re-examine what Article 27.03 does and does not do. Article 27.03
provides that an information or indictment may be set aside when unauthorized persons have been
present during grand jury deliberations, but it makes no reference at all to the presence of
unauthorized persons during grand jury testimony. In other words, Article 27.03 provides a specific
remedy, but with respect to only the deliberations, not the testimony, referenced in Article 20.011. 
See Tex. Code Crim. Proc. Ann. art. 27.03(2). Therefore, treating Article 20.011's proscriptions
as providing "other grounds authorized by law," to set aside an information or indictment, would
necessarily render Article 27.03(2)--specifically providing a remedy for unauthorized presence
during grand jury deliberations--an unnecessary repetition of what Article 20.011 could accomplish
as "other grounds." Article 27.03(2) simply would not be necessary if Article 20.011 authorized
setting aside the indictment for unauthorized presence during grand jury testimony and deliberations.

 To further illustrate, it is helpful to first reconcile the two articles with respect to grand jury
deliberations. Article 20.011(b) identifies who may be present during grand jury deliberations--only
grand jurors. Article 27.03(2) then authorizes the trial court to set aside an indictment if a defendant
shows that unauthorized persons were present during those deliberations. Similarly, Article
20.011(a) identifies who may be present during testimony before the grand jury. However, there is
no specific provision authorizing setting aside the indictment on that basis. The "any other grounds"
language cannot be used because, again, to do so would render Article 27.03(2) useless and
redundant.

 In order to accept Walter's position, we would have to treat Article 27.03(2) as a redundant
provision. We are bound by rules of statutory construction not to interpret legislation in such a
manner as to render a provision useless. See Fearance v. State, 771 S.W.2d 486, 522 (Tex. Crim.
App. 1988) (enactment of redundant legislation a "useless thing"). We cannot conclude Article
20.011, as "other grounds" does, in part, what Article 27.03(2) does specifically. To do so would
make Article 27.03(2) unnecessary. Therefore, Article 20.011 does not authorize the setting aside
of the indictment on the basis that unauthorized persons were present during grand jury testimony. (9)

(5) The Trial Court Did Not Abuse Its Discretion by Granting the State's Challenges for Cause

 

 Walter complains the trial court erroneously granted the State's challenges for cause regarding
five jurors who indicated they would hold the State to a standard of proof higher than beyond a
reasonable doubt. (10)

 It is left to the discretion of the trial court to first determine whether bias exists. Anderson
v. State, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982). An erroneous decision by a trial court to
grant the State's challenge for cause will result in a reversal of the conviction only if the appellant
can show that he or she was deprived of a lawfully constituted jury as a result of the trial court's
action. See Feldman v. State, 71 S.W.3d 738, 749 (Tex. Crim. App. 2002); Jones v. State, 982
S.W.2d 386, 394 (Tex. Crim. App. 1998).

 A challenge for cause may be made by the State if a juror has a bias or prejudice against any
phase of the law on which the State is entitled to rely for conviction or punishment. Tex. Code
Crim. Proc. Ann. art. 35.16(b)(3) (Vernon 2006). Bias is an inclination toward one side of an issue
that leads to a natural inference that the juror will not act with impartiality; prejudice is prejudgment. 
See Anderson, 633 S.W.2d at 853. When a juror indicates this type of bias as a matter of law, he or
she must be excused despite any protestations by the juror of an ability to set the bias aside and be
fair and impartial. See Clark v. State, 717 S.W.2d 910, 917 (Tex. Crim. App. 1986); Anderson, 633
S.W.2d at 854; Mize v. State, 754 S.W.2d 732, 742 (Tex. App.--Corpus Christi 1988, pet. ref'd).

 Here, five prospective jurors--those assigned numbers 44, 45, 53, 127, and 154--indicated
that, when faced with the facts of a case in which the State seeks the death penalty, he or she would
hold the State to a standard of proof higher than beyond a reasonable doubt. For instance, Juror 44
explained that he would have to be "absolutely sure without any doubt" in a death penalty case. 
Jurors 45 and 127 were, initially, less emphatic than the others and, on the defense's request, the trial
court spoke with those two individually regarding their positions on the standard of proof. Both
jurors clarified that they could not hold the State to the beyond-a-reasonable-doubt standard, that the
State would have to prove its case more convincingly. None of the challenged jurors ever wavered
on his or her position by trying to state that he or she could put aside his or her personal position and
follow the law. Each consistently indicated that they would have to be convinced by a standard
higher than the beyond-a-reasonable-doubt standard. 

 Therefore, we conclude that the trial court did not abuse its discretion by determining that
these five jurors were biased against the law to be applied in this case. Based on the rule in
Anderson and Clark that a juror who has demonstrated bias as a matter of law must be excused, we
conclude the trial court properly granted the State's challenges for cause and overrule Walter's point
of error.

(6) The Trial Court Did Not Err by Refusing to Include an Aggravated Robbery Instruction

 A  defendant  is  entitled  to  the  submission  of  a  lesser  offense  if  a  two-pronged  test
is met: (1) the lesser-included offense must be included within the proof necessary to establish the
offense charged, and (2) some evidence must exist in the record that would permit a jury rationally
to find that, if the defendant is guilty, he or she is guilty only of the lesser offense. See Solomon v.
State, 49 S.W.3d 356, 368-69 (Tex. Crim. App. 2001).

 Pursuant to Section 19.03(a)(7)(A) of the Texas Penal Code, the State alleged that Walter

 did unlawfully then and there intentionally cause the death of an individual, Chrystal
Willis by shooting Chrystal Willis with a firearm and did then and there intentionally
cause the death of an individual, Rebecca Shifflett by shooting Rebecca Shifflett with
a firearm and did then and there intentionally cause the death of an individual,
Matthew Hines by shooting Matthew Hines with a firearm and all murders were
committed during the same criminal transaction.


That is, the State characterized the offense as capital murder by virtue of there being three victims
murdered in the same criminal transaction. While the State may have charged Walter with capital
murder by alleging that he committed murder in the course of committing aggravated robbery, it did
not do so. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2006). Nevertheless, Walter
argues that the trial court erred by refusing to include his requested instruction on aggravated
robbery.

 Aggravated robbery is not included within the proof necessary to establish that Walter
murdered three people in one criminal transaction. Further, even if the first prong were satisfied, we
note that there is no evidence that, if Walter is guilty, he is guilty only of aggravated robbery. While
Walter denied having shot the victims, he also denied having gone to the restaurant at all that night. 
Therefore, his testimony does not suggest that, if he is guilty, he is guilty only of aggravated robbery. 
No other evidence in the record suggests that Walter did not shoot the three victims. 

 Walter cites Broussard v. State to support his position. 642 S.W.2d 171, 173 (Tex. Crim.
App. 1982). However, we distinguish Broussard by pointing out that the State in Broussard had
alleged capital murder as murder during the commission of robbery. Id. Such is not the case here;
Broussard is inapplicable to these facts. The trial court did not err by refusing to include a charge
on aggravated robbery.

 Having overruled all of Walter's points of error, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 10, 2006

Date Decided: November 15, 2006


Publish
1. Walter began working at the Outback Steakhouse in September 2001 and was, by most
accounts, a problem employee, having been fired by at least one manager, and perhaps by another
prior manager as well. New general manager Matthew Hines decided to give him another chance,
but he also fired Walter August 5, 2003, after continued problems. Since then, Walter had been
working at Tyson Chicken and staying with a female friend in nearby Hope, Arkansas. He came to
Texarkana to attend his sister's weekly party where he connected with Henson at some point. 
Henson, also, had been fired from Outback some months earlier. Walter and Henson planned to rob
the restaurant. They left together in a Chevrolet Blazer that Walter had been borrowing from his
sister. The two gained entry to the restaurant through a side door known by all of the employees to
be defective. 
2. Johnson testified that a very serious and nervous Walter admitted committing the robbery
and shooting three people at the restaurant. Walter explained that Henson was with him at the
restaurant. In response, Johnson advised Walter that Walter should have killed Henson, also, to
ensure that Henson would not talk. 

 Johnson testified that, earlier on August 31, he had loaned Walter the loaded Lorcin semi-automatic .380 caliber handgun used in the murders. He testified that Walter asked him for the gun
and left Johnson with the impression that he wanted the gun as protection against crime in his
neighborhood. Later that day, Walter returned to Johnson and mentioned "do[ing] Outback." 
Johnson did not take the comment seriously until Walter returned a second time and continued to
talk about robbing the Outback Steakhouse with the gun. Johnson then attempted to dissuade Walter
from that idea and suggested Walter return the gun to Johnson. Walter did not return the gun.

 Johnson further testified that, after Walter was arrested for the murders, Walter's
mother--Johnson claims her as his mother-in-law--found the gun at Walter's apartment and
destroyed it. Johnson also admitted that he initially perjured himself before the grand jury by
attempting to provide an alibi for Walter, but that later he agreed to cooperate when the State agreed
it would not pursue perjury or other charges against Johnson if he would testify in this case.
3. Roderick was familiar with Walter and testified that Henson and Walter were acquaintances. 
Roderick further testified that, the morning following the murders, a nervous Henson told him about
the events. Before Roderick heard anything about the murders, Henson told him that Walter and
Henson had planned on "hit[ting] a lick," slang for committing a robbery, at the Outback Steakhouse. 
Henson explained to Roderick in their private conversation that Walter went into the back office,
came out with a bag of money, and went back to the office to perhaps get keys to the safe. As
Henson waited in the hallway, he heard voices pleading with Walter not to shoot and then heard six
gunshots. Henson and Walter left in Walter's vehicle and split the money, amounting to
approximately $400.00 each. Fearing that cameras may have filmed the two as they left the
restaurant, Henson enlisted the help of Roderick to burn the clothing Henson wore that night. Later,
Roderick suggested to Henson that he turn himself in and, after Roderick began fearing that he was
becoming too involved himself, had his wife call the police and relay the information he had learned
from Henson. 
4. The United States Supreme Court added the following distinction:


 Statements are nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the interrogation is
to enable police assistance to meet an ongoing emergency. They are testimonial
when the circumstances objectively indicate that there is no such ongoing emergency,
and that the primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.


Davis, 126 S.Ct. at 2273-74.
5. A person commits criminal conspiracy if, with intent that a felony be committed, he or she
agrees with one or more persons that they or one or more of them engage in conduct that would
constitute the offense. See Tex. Penal Code Ann. § 15.02(a)(1) (Vernon 2003); Cienfuegos v.
State, 113 S.W.3d 481, 489-90 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd).
6. In 1986, Johnson was convicted of sexual assault and placed on probation. This probation
was revoked in 1988 when Johnson was convicted for robbery and murder and sentenced to ten
years' confinement. Johnson was paroled in 1992 only to return to prison months later after being
convicted of possession of a controlled substance and possession of a firearm by a felon. For these
1993 convictions, he was sentenced to three years' confinement, to run concurrently with the
remaining sentence from the 1988 convictions. Johnson was again paroled in 1995 and remained
on parole until November 15, 2000. So, the record indicates that Johnson was not released from
confinement for the 1988 convictions until either 1995 when he was paroled or 2000 when he was
released from parole. See Tex. Gov't Code Ann. § 508.001(6) (Vernon 2004) (describing parole
as a "discretionary and conditional release" that allows an inmate to "serve the remainder of the
inmate's sentence under the supervision of the pardons and paroles division" and suggesting that
parole is not a release from confinement for purposes of Rule 609 of the Texas Rules of Evidence). 
Under either calculation, the 1988 convictions were not remote convictions to be evaluated under
the stricter "substantially outweigh" standard of Rule 609(b). Further, the 1993 convictions for
possession of a controlled substance and possession of a firearm by a felon represent intervening
felonies which would vitiate the remoteness of any prior convictions and place the older convictions
back under the "outweigh" standard of Rule 609(a). See Jackson v. State, 11 S.W.3d 336, 339 (Tex.
App.--Houston [1st Dist.] 1999, pet. ref'd); Hernandez v. State, 976 S.W.2d 753, 755 (Tex.
App.--Houston [1st Dist.] 1998, pet. ref'd). 

7. Had the State attended oral argument at this Court's invitation, it may have more thoroughly
explained its interpretation of Article 20.011(a).
8. See also Baldwin v. State, 478 S.W.2d 476, 478 (Tex. Crim. App. 1972) (citing long-
standing rule such presence "not discountenanced" and concluding no reversible error shown);
Harris v. State, 450 S.W.2d 629, 630 (Tex. Crim. App. 1970) (holding Article 27.03(2), authorizing
dismissal based on presence of unauthorized people during deliberations, means more than "mere
examination of witnesses").
9. Nor does it serve as a basis for setting aside the indictment because unauthorized persons
were present during the grand jury's deliberations; Article 27.03(2) plainly does that.
10. In the same analysis, Walter also argues that the trial court erred by refusing to submit a
definition of reasonable doubt in the jury charge. We can readily dispose of that issue, however. 
The Texas Court of Criminal Appeals has specifically held that a "reasonable doubt" definition is
not required. See Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). We applied
Paulson in Rogers v. State, 85 S.W.3d 359, 362 (Tex. App.--Texarkana 2002, no pet.).